710 A.2d 576

GARY CAMPBELL AND BARBARA CAMPBELL, PLAINTIFFS–RE-SPONDENTS, v. LION INSURANCE COMPANY, DEFENDANT–APPELLANT, AND MICHAEL TEPEDINO AND MICHAEL TEPEDINO INSURANCE AGENCY, DEFENDANTS–RESPON-DENTS, JOANNE LIVOLSI, DEFENDANT.

JOANNE LIVOLSI, THIRD–PARTY PLAINTIFF, v.
MARKET TRANSITION FACILITY OF NEW
JERSEY, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued May 6, 1998—Decided May 20, 1998.

Before Judges SHEBELL, A.A. RODRIGUEZ and COBURN.

*Mark E. Utke,* argued the cause for appellant (*Margolis Edelstein,* attorneys; *Robert M. Kaplan,* of counsel; *Mr. Utke,* on the brief).

*Kyle T. Kievit,* argued the cause for respondents Gary Campbell and Barbara Campbell

*Amanda W. Figland,* argued the cause for respondents Michael Tepedino and Michael Tepedino Insurance Agency (*White and Williams,* attorneys; *Ms. Figland,* of counsel and on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

This is a declaratory judgment action involving the parties' rights under an automobile insurance policy.[1] Plaintiffs, Gary and Barbara Campbell, assert a right to arbitrate claims for uninsured motorist or underinsured motorist benefits against their carrier, defendant Lion Insurance Company ("Lion"). The only defense raised at trial by Lion was an exclusion of coverage expressed by the policy in the following terms:

A.  We do not provide coverage under this endorsement [for uninsured or underinsured motorist coverage] for "property damage" or "bodily injury" sustained by any person:

---

[1] This action was properly filed in the Law Division. *Government Employees Ins. Co. v. Butler,* 128 *N.J.Super.* 492, 496, 320 A.2d 515 (Ch.Div.1974) (holding that "an action for the declaration of the parties' rights under an insurance policy is basically an action for construction of a contract which has been held to be cognizable before the law courts").

* * *

3. When "your covered auto" is being used to *carry* persons or *property for a fee.* This exclusion does not apply to a share-the-expense car pool.
[ (Emphasis added).]

At the conclusion of a bench trial, the Law Division judge ruled in favor of plaintiffs. The judgment provided, "Lion Insurance Company shall provide Uninsured/Underinsured Motorist Coverage to the plaintiff and shall select an arbitrator according to the terms of the policy...."[2] Defendant Lion appeals. We reverse.

## I.

On May 22, 1992, plaintiff Gary Campbell was involved in a motor vehicle accident in Egg Harbor Township as a result of which he sustained numerous injuries and incurred medical expenses allegedly in excess of $10,000. He was driving his own van when it was struck by an automobile owned and operated by defendant Joanne Livolsi. Her insurance policy had been issued on behalf of Market Transition Facility of New Jersey ("MTF"), which initially denied coverage on the ground that the policy had been canceled for non-payment of premiums. During the pendency of this matter, which also involved the Campbells' negligence action against Livolsi and Livolsi's declaratory judgment action seeking coverage from MTF, Gary and his wife, Barbara, settled their claims with MTF for one-half of the policy limits.

At the time of the accident, the Campbells were the beneficiaries of an automobile insurance policy issued by Lion. The policy listed two vehicles, a 1980 station wagon, driven primarily by Barbara, and the 1985 van, for which Gary was listed as the primary driver. There were no seats in the rear of the van and its outer sides bore the inscription, "Auto Shopper." The policy contained the above quoted exclusion which formed the basis of

---

[2] Of course, plaintiffs could not be entitled to both uninsured and underinsured motorists coverage with respect to a single tortfeasor, as is the case here. There was confusion below with respect to which type of coverage was applicable, a point which is discussed later in this opinion.

Lion's denial of coverage on the Campbells' claims for uninsured or underinsured motorist insurance.

These are the facts relating to the exclusion. Despite Gary's representation to Lion that the van was used for pleasure, it was in fact being used, at least in part, for commercial purposes and, indeed, it had commercial license plates. Gary bought the van in 1990 from Showcase Publications, Inc., ("Showcase") for the purpose of delivering its weekly advertising newspaper called "Auto Shopper." Initially, he made deliveries one day a week in Atlantic County. Over time other routes were added in Cape May and Cumberland counties, with the result that he would be making deliveries on three days each week. Gary was still making deliveries of "Auto Shopper" for Showcase at the time of the accident. There is no evidence regarding the manner in which he was compensated for this work by Showcase.

On January 27, 1992, Gary entered into a "Contract Hauler Agreement" with South Jersey Publishing Company which publishes a newspaper known as "The Press of Atlantic City." The agreement, cancelable by either party on ten-days notice, provides for the delivery of newspapers seven days a week to specific "retail outlets" and "Home Delivery Carriers" in the "Pleasantville/Absecon/Smithville Distribution areas." The newspapers had to be picked up by 2:00 a.m. and delivered no later than 6:00 a.m. The agreement designates Gary as "Hauler" and includes the following statements:

2. *Delivery Fee.* In exchange for the delivery services described in this Agreement, Hauler will be paid a delivery fee in the amount of $500.00 per week ("the Delivery Fee"). The Delivery Fee will be paid by The Press to the Hauler on Friday of the week after the week in which delivery services were rendered, subject to any deductions or setoffs described below. * * * When the Monday thru Saturday Edition is in more than one bundled section, Hauler will receive $25.00 per extra section.

3. *Deductions From Delivery Fee.*

(a) If the Hauler's delivery vehicle breaks down or is otherwise disabled while providing the delivery services required under this Agreement, The Press will, if reasonably possible, send a vehicle to pick up and complete delivery of the newspapers not yet delivered by Hauler. In any such case, The Press will deduct from the Delivery Fees next payable to Hauler an amount equal to The

Press's costs in completing such delivery, including a charge equal to $0.40 per mile driven, plus all actual labor (man-hour) charges.

\* \* \*

(c) If any newspapers are damaged in any manner or by any cause after Hauler receives them for delivery, The Press will deduct from the Delivery Fee otherwise payable to the Hauler the full retail (newsstand) price of the newspapers so damaged.

\* \* \*

7. *Independent Contractor.* Hauler warrants, and the parties agree, that Hauler is an independent contractor, free to provide delivery or other services to any other party or person whatsoever, both during the term of this Agreement and after its expiration. Nothing contained herein shall be construed to imply an employment relationship between Hauler and The Press. Hauler acknowledges, understands and agrees that, based on Hauler's representations, The Press will not deduct or withhold from the Delivery Fee payable to hauler hereunder any amounts of state or Federal income taxes, unemployment and disability, FICA or other deductions or impositions whatsoever. Hauler is solely responsible for payment or deposit of any and all such amounts.

Although Gary indicated that he also used the van for pleasure and for transporting his children, and even though he testified that he did not consider himself to be "in business," it is apparent that he was earning over $25,000 a year from the use of the vehicle for his newspaper hauling contracts. The accident occurred while Gary was performing his contractual undertakings.

## II.

The first question presented by this case is the meaning of the insurance policy's exclusion of uninsured and underinsured motorist coverage when the vehicle is being used "to carry ... property for a fee." In *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur*, 35 *N.J.* 1, 170 *A.*2d 800 (1961), the Court summarized the applicable rules of construction governing interpretation of an insurance policy:

Solution of a problem of construction of an insurance policy must be approached with a well settled doctrine in mind. If the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect

the insured to the full extent that any fair interpretation will allow. *Kievit v. Loyal Protective Life Ins. Co., etc.,* 34 *N.J.* 475, 170 *A.*2d 22 (1961). Moreover, in evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question; also whether judicial decisions appear in the reports attributing a more comprehensive significance to it than that contended for by the insurer. *Mahon v. American Cas. Co. of Reading, Pennsylvania,* 65 *N.J.Super.* 148, 167 *A.*2d 191 (App.Div.1961). Insurance contracts are unipartite in character. They are prepared by the company's experts, men learned in the law of insurance who serve its interest in exercising their draftsmanship art. The result of their effort is given to the insured in printed form upon the payment of his premium. The circumstances long ago fathered the principle that doubts as to the existence of coverage must be resolved in favor of the insured. *Barker v. Iowa Mut. Ins. Co.,* 241 N.C. 397, 85 *S.E.*2d 305 (Sup.Ct. 1955).

These general rules of construction have spawned a number of subsidiary ones of equally universal recognition. For example, where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied. *Cal–Farm Ins. Co. v. Boisseranc,* 151 *Cal.App.*2d 775, 312 *P.*2d 401, 405 (Cal.App.1957).

[*Id.* at 7–8, 170 *A.*2d 800.]

The "carrying property for a fee" exclusion has not yet been construed by the courts of this state.[3] However, it has received attention elsewhere in cases which provide useful guidance.

The most recent opinion appears to be *United States Fidelity & Guar. Co. v. Lightning Rod Mut. Ins. Co.,* 80 *Ohio St.*3d 584, 687 *N.E.*2d 717 (1997). Following the overwhelming majority of jurisdictions[4] which have addressed the meaning of this exclusion, the

---

[3] Although the trial court in *CSC Ins. Servs. v. Graves,* 293 *N.J.Super.* 244, 247, 679 *A.*2d 1244 (Law Div.1996), said that this exclusionary phrase "must be taken to mean ... 'used as a public or livery conveyance,' " the statement was made in the context of an action for personal injury protection benefits (PIP) and reflects the court's determination that the phrase was an improper attempt to add an exclusion beyond those allowed by *N.J.S.A.* 39:6A–2a and *N.J.S.A.* 39:6A–7. Thus, that case does not provide an interpretation of the exclusion which bears on the issue at hand.

[4] *See Pizza Hut of Am., Inc. v. West Gen. Ins. Co.,* 36 *Ark.App.* 16, 816 *S.W.*2d 638 (1991); *RPM Pizza, Inc. v. Automotive Cas. Ins. Co.,* 601 *So.*2d 1366 (La.1992); *Progressive Cas. Ins. Co. v. Metcalf,* 501 *N.W.*2d 690 (Minn.Ct.App.

court held that the exclusion was ambiguous in the context of a salaried employee who was using a personally owned motor vehicle to deliver the employer's products to the employer's customers. Focusing in on the word "fee," the court had this to say:

> A "fee" is defined as "[a] recompense for an official or professional service or a charge or emolument or compensation for a particular act or service. A fixed charge or perquisite charged as recompense for labor; reward, compensation, or wage given to a person for performance of services or something done or to be done." *Black's Law Dictionary* (6 Ed.1990) 614; see, also, *Webster's Third New International Dictionary* (1986) 833 (with definitions of "fee" as a fixed charge for various particular services). A determination of whether Spurlock [the employee] was carrying property "for a fee" will differ depending on which part of the definition we look to, that is, whether a fee includes *any* "compensation, or wage * * * for performance of services" or must be "for a particular act or service."

> Thus, Lightning Rod's [the employee's insurance company] policy can be read two ways: first, as excluding from coverage use of a vehicle to transport property when there is *any* kind of payment to the insured, and second, as excluding coverage only when a fee is paid *specifically for* the particular act of transporting property. Under the first reading, Spurlock's use of her car to deliver pizza would be excluded from coverage because Domino's was paying her an hourly wage. Under the second reading, however, this use would *not* be excluded by the Lightning Rod policy, since neither Domino's nor its customers paid Spurlock a fee specifically for delivering the pizza. Under either reading, the policy excludes taxicabs transporting persons specifically for a fee or moving vans transporting property specifically for a fee. Only the first reading, however, excludes Spurlock's errands on behalf of her employer.

> [*Id.* 687 *N.E.*2d at 719.]

In light of the ambiguity, the court construed the employee's insurance policy as providing coverage for the accident in which she was involved. It also noted, "Whether [the employee's insurance company] intended to cover commercial use of [the employee's] vehicle is irrelevant because the policy language is imprecise." *Ibid.*

The Ohio decision and those cases cited in footnote 4, *supra,* all involve salaried employees, some of whom performed services other than delivery of the employer's product. No case has come to our attention which deals with interpretation of the exclusion in

---

1993); *United Servs. Auto. Ass'n v. Couch,* 643 *S.W.*2d 668 (Tenn.Ct.App.1982). *But see United States v. Milwaukee Guardian Ins. Co.,* 966 *F.*2d 1246 (8th Cir.1992).

relation to an independent contractor working for a single employer or, as here, an independent contractor providing delivery services to more than one company.

In *RPM Pizza, Inc., supra,* the court offered the following guidance:

Thus the meaning of "fee" may be construed narrowly to encompass only specific contracts of carriage such as when a person makes a definite payment to another to carry ... specific ... property, such as hauling trash or moving furniture....
[601 *So.*2d at 1368.]

That statement is a fair description of the relationship between Gary Campbell and the two companies for whom he was providing services when the accident occurred. He was not receiving a salary; he was being paid fees separately by each company for delivering newspapers. We emphasize, in that regard, those provisions of the contract with South Jersey Publishing Company which require reduction of the weekly fee if Gary's vehicle breaks down while making deliveries or if newspapers are damaged, and which permit an increase in the fee if other than Sunday editions are bundled in more than one section. Consequently, the exclusion when construed most strictly against the insurance company would still bar coverage.

### III.

Plaintiffs' complaint sought both uninsured (UM) and underinsured (UIM) motorist coverage from Lion. The judgment entered by the trial court permits plaintiffs to pursue either form of relief. However, for reasons which are not clear, and despite plaintiffs' counsel's statement in summation that "Mr. Campbell is entitled to UM/UIM coverage under this case," the trial court's opinion is limited to a ruling on UM coverage. The plaintiffs' brief is devoted almost entirely to justification of their right to UIM coverage. They are of course entitled to take that position since appeals are "taken from judgments, not opinions, and ... a respondent can argue any point on the appeal to sustain the trial court's judgment." *Chimes v. Oritani Motor Hotel, Inc.,* 195 *N.J.Super.* 435, 443, 480 *A.*2d 218 (App.Div.1984) (citation omit-

ted). Needless to say, the appellant is also entitled to address the issue.

### A.

Plaintiffs' claim for UM coverage is barred by the settlement they reached with Livolsi's carrier, and that is so regardless of the carrier's initial position denying coverage and despite the absence of any formal admission of coverage. *Kerwien v. Melone,* 288 *N.J.Super.* 268, 274–75, 672 *A.*2d 235 (App.Div.1996). Thus, we should not address the issue on which the trial court focused its attention: whether the exclusion in question, in relation to UM coverage, violates public policy because it goes beyond those exclusions permitted by statute. *See N.J.S.A.* 17:28–1.1; *cf. CSC Ins. Servs., supra,* 293 *N.J.Super.* at 248, 679 *A.*2d 1244; *Progressive Cas. Ins. Co., supra,* 501 *N.W.*2d at 693 (Davies, J., concurring) (expressing the view that in a UM case, acceptance of this exclusion would "defeat the strong policy underlying Minnesota's system of compulsory insurance").

### B.

Plaintiffs contend they are entitled to pursue their claim for UIM benefits because the exclusion is violative of public policy. According to them, the exclusion frustrates the purposes of UIM coverage and is unenforceable. We disagree.

There are important distinctions between UM and UIM coverage. UM coverage must be included in every policy of insurance. *N.J.S.A.* 17:28–1.1a. One of its primary purposes is to alleviate financial burdens on the Unsatisfied Claim and Judgment Fund which, absent UM coverage, would be required to respond to the claims of injured parties. *Riccio v. Prudential Property & Cas. Ins. Co.,* 108 *N.J.* 493, 503–04, 531 *A.*2d 717 (1987). As a consequence, in UM cases our courts have frequently struck policy provisions which were more restrictive that those mandated by statute. *See, e.g., Perez v. American Bankers Ins. Co. of Florida,* 81 *N.J.* 415, 409 *A.*2d 269 (1979); *Ciecka v. Transamerica Ins.*

*Group,* 81 *N.J.* 421, 409 *A.*2d 272 (1979); *Walkowitz v. Royal Globe Ins. Co.,* 149 *N.J.Super.* 442, 374 *A.*2d 40 (App.Div.), *certif. dismissed,* 75 *N.J.* 584, 384 *A.*2d 815 (1977).

UIM coverage, by contrast, must be offered by an insurance company but need not be accepted by the insured. *N.J.S.A.* 17:28–1.1b. As noted by the Court in *French v. New Jersey Sch. Bd. Ins. Group.,* 149 *N.J.* 478, 694 *A.*2d 1008 (1997):

> The different legislative concern for the two forms of insurance is that availability of uninsured motorist benefits affects all ratepayers of insurance (all auto insurance companies pay a portion of their premiums into the Uninsured Motorist Fund), where the availability of UIM benefits affects only the parties insured under the contract.

> [*Id.* at 491–92, 694 *A.*2d 1008.]

As a result, the *French* Court went on to hold as follows:

> " '[I]t is fundamental that in the absence of a statutory prohibition to the contrary, an insurance company has a right to impose whatever conditions it desires prior to assuming its obligations.' "

> [*Id.* at 492, 694 *A.*2d 1008 (quoting *Royal Ins. Co. v. Rutgers Cas. Ins. Co.,* 271 *N.J.Super.* 409, 638 *A.*2d 924 (App.Div.1994)).]

That is not to suggest that the insurance company's power to impose conditions is unlimited. Based on the language employed, the insured is still entitled to coverage in accordance with his "reasonable expectations." *Cook–Sauvageau v. PMA Group,* 295 *N.J.Super.* 620, 624, 685 *A.*2d 978 (App.Div.1996), *certif. denied,* 150 *N.J.* 29, 695 *A.*2d 671 (1997). If the policy language supports two interpretations, one favorable to the insurer and the other favorable to the insured, courts are obliged to adopt the interpretation supporting coverage. *Watson v. Agway Ins. Co.,* 291 *N.J.Super.* 417, 423, 677 *A.*2d 788 (App.Div.), *certif. denied,* 146 *N.J.* 500, 683 *A.*2d 202 (1996). Furthermore, exclusions in particular are to be strictly interpreted against the insurance company. *Mazzilli, supra,* 35 *N.J.* at 8, 170 *A.*2d 800. However, an insured is chargeable with knowledge of the contents of a policy, *Heake v. Atlantic Cas. Ins. Co.,* 15 *N.J.* 475, 483, 105 *A.*2d 526 (1954), and where, as we have demonstrated here under section *II, supra,* the language of the exclusion construed most

favorably to the insured results in the absence of coverage, the insured is bound thereby.

Reversed.