721 A.2d 1

UNITED SERVICES AUTOMOBILE ASSOCIATION (USAA),
PLAINTIFF–APPELLANT, v. TIMOTHY B. TURCK,
DEFENDANT–RESPONDENT.

Argued November 10, 1998—Decided December 17, 1998.

*George Wilgus, III*, argued the cause for appellant (*Lenox, Socey, Wilgus, Formidoni & Casey*, attorneys).

*Thomas J. Shusted, Jr.*, argued the cause for respondent.

The opinion of the Court was delivered by

STEIN, J.

The critical issue presented by this appeal is the arbitrability of a coverage issue raised by an insurer in defense of a claim asserted by its insured pursuant to the uninsured motorists (UM) coverage provisions of his automobile liability policy. The policy provided that, on demand of an insured or the insurer, disputes concerning claims for UM coverage would be submitted to arbitration if the parties did not agree on whether a person insured by the policy "is legally entitled to recover damages under this endorsement" or with respect to the amount of damages.

Because the insured's injury allegedly was caused by a bullet fired intentionally by a passenger in an uninsured automobile, the insurer contended that the injury was not caused by an "accident," a condition of coverage under the policy. When the insured demanded arbitration the insurer instituted a declaratory judgment action to prevent arbitration on the ground that "coverage" issues, as distinguished from liability or damages issues, are not arbitrable under the policy. The Law Division, agreeing with the insurer that the claim was not covered and that the coverage issue was not arbitrable, granted the insurer's motion for summary judgment. In an unpublished opinion the Appellate Division reversed, holding that under the specific policy language the coverage issue was arbitrable, and remanded the matter for submission to an arbitrator.

I

The material facts are undisputed. The insured, Timothy Turck (Turck), was a special agent with the Federal Bureau of Investigation (FBI). On March 16, 1994, while on assignment in Philadelphia, he was assigned to assist in the observation and apprehension of certain criminal suspects.

Several cars occupied by FBI agents followed four suspects riding in a black Hyundai automobile. When the Hyundai stopped at a traffic light, agents' cars surrounded the vehicle and obstructed its movement. Turck exited his car and approached the Hyundai, demanding that the passengers raise their hands. One passenger fired a handgun at Turck, and a bullet struck him on the left wrist. Turck returned fire, but the Hyundai fled the scene and the suspects were not apprehended. The agents established that the Hyundai was owned by Margaret Tucker, an uninsured motorist.

At the time of the shooting, Turck had a personal automobile insurance policy issued by the United Services Automobile Association (USAA). The uninsured motorist coverage provisions of Turck's policy described the scope of that coverage:

We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle where such coverage is indicated as applicable in the Declarations because of:

1. Bodily injury sustained by a covered person and caused by an accident; and

2. Property damage caused by an accident except under paragraph 2 of the definition of uninsured motor vehicle.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle or underinsured motor vehicle.

. . . .

"Covered person" as used in this endorsement means:

1. You and any family member.

2. Any other person occupying your covered auto.

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

The policy also contained an arbitration provision applicable specifically to UM coverage:

If we and a covered person do not agree:

1. Whether that person is legally entitled to recover damages under this endorsement; or

2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third.

. . . .

A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the covered person is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount of damages does not exceed the minimum limit for liability specified by the financial responsibility law of New Jersey.

Turck filed a claim with USAA seeking recovery for his injuries pursuant to the uninsured motorists coverage provisions of the policy. USAA denied coverage, contending that Turck's injury was not caused by an "accident," but rather by the intentional firing of a handgun. Consistent with the policy provisions, Turck demanded arbitration. USAA then instituted this declaratory judgment seeking to preclude arbitration on the basis that UM coverage issues are not arbitrable.

In the Law Division, the parties cross-moved for summary judgment. The Law Division determined that the coverage issue was legal rather than factual, and that a court rather than an arbitrator should resolve it. Concluding that an injury inflicted by a passenger in an uninsured motor vehicle intentionally firing a handgun did not constitute a covered accident within the meaning of the policy provisions, the court granted USAA's motion for summary judgment.

The Appellate Division reversed. The court took note of decisional law holding that "coverage questions are not arbitrable under the usual arbitration clause contained in an uninsured motorist endorsement." *New Jersey Mfrs. Ins. Co. v. Franklin,* 160 *N.J.Super.* 292, 297, 389 *A.*2d 980 (App.Div.1978). Nevertheless, the court determined that it would be guided by the holding in *Bocelli v. Hanover Metro Insurance Co.,* 219 *N.J.Super.* 6, 10, 529 *A.*2d 997 (App.Div.1987), to the effect that the uninsured motorists endorsement there at issue "renders arbitrable all issues relating to the liability of the carrier, including issues of coverage, and not just issues related to the liability of the uninsured motorist and the amount of damages." The Appellate Division panel concluded that *Bocelli* was the more appropriate precedent to follow because the uninsured motorists arbitration clause in *Bocelli* was virtually identical to the language in Turck's policy, whereas the standard policy language relied on by older cases sharply restricted the issues for resolution by arbitration. Moreover, the court relied on this Court's observation in *Zirger v. General Accident Insurance Co.,* 144 *N.J.* 327, 676 *A.*2d 1065 (1996), that we would "look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration," *id.* at 343, 676 *A.*2d 1065 (quoting *Ohio Cas. Ins. Co. v. Benson,* 87 *N.J.* 191, 199, 432 *A.*2d 905 (1981)), to support its conclusion that the broadened scope of arbitration endorsed by *Bocelli* was more consistent "with the modern view of dispute resolution."

We granted USAA's petition for certification. 153 *N.J.* 213, 708 *A.*2d 64 (1998).

## II

Since 1968 it has been mandatory in New Jersey for automobile insurers to offer UM coverage to their insureds. *L.* 1968, *c.* 385 (codified at *N.J.S.A.* 17:28–1.1 and –1.2). The legislation had a two-fold purpose:

> (1) to place the innocent victims of automobile accidents in nearly as good a position as they would have been had the uninsured tortfeasor complied with the state's compulsory insurance laws; and (2) to alleviate financial burdens on the Unsatisfied Claim and Judgment Fund, which would be forced, absent uninsured motorist coverage, to respond to the injured parties' claims.
>
> [Craig & Pomeroy, *New Jersey Auto Insurance Law* 259 (1998).]

In construing the statutory provisions mandating UM coverage, our courts generally have been "committed to a liberal construction of automobile insurance legislation to effect 'the broadest protection of auto accident victims consistent with the language of the pertinent statute.'" *Riccio v. Prudential Property & Cas. Ins. Co.,* 108 *N.J.* 493, 502, 531 *A.*2d 717 (1987) (quoting *Ciecka v. Transamerica Ins. Group,* 81 *N.J.* 421, 428, 409 *A.*2d 272 (1979) (quoting *Motor Club of Am. Ins. Co. v. Phillips,* 66 *N.J.* 277, 293, 330 *A.*2d 360 (1974))).

Although not required by the enabling legislation, the use of arbitration to expedite resolution of UM claims is widespread and UM coverage provisions in automobile liability policies characteristically authorize arbitration of disputes at the option of either party. Described as "the most controversial provision in the entire endorsement," the UM arbitration clause has generated extensive litigation throughout the country concerning the intended scope of the arbitration proceeding. A.S. Klein, Annotation, *What Issues Are Arbitrable Under Arbitration Provision of Uninsured Motorist Insurance,* 29 *A.L.R.*3d 328, 332–34 (1970). In New Jersey, the guiding principle governing the scope of an arbitration clause is "that only those issues may be arbitrated which the parties have agreed shall be. Stated another way, the

arbitrator's authority is circumscribed by whatever provisions and conditions have been mutually agreed upon." *In re Arbitration Between Grover & Universal Underwriters Ins. Co.*, 80 *N.J.* 221, 229, 403 *A.*2d 448 (1979). That salutary principle was elaborated on in *Cohen v. Allstate Insurance Co.*, 231 *N.J.Super.* 97, 100–01, 555 *A.*2d 21 (App.Div.1989):

> Although the public policy of this State is to favor arbitration as a means of settling disputes which otherwise would go to court, it is equally true *that the duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties' agreement. The parties may shape their arbitration in any form they choose and may include whatever provisions they wish to limit its scope.* The parties have the right to stand upon the precise terms of their contract; the court may not rewrite the contract to broaden the scope of arbitration or otherwise make it more effective. It is also significant that, although the legislature has mandated binding arbitration of PIP claims at the option of the insured (*N.J.S.A.* 39:6A–5c) and has required non-binding arbitration of certain automobile tort claims (*N.J.S.A.* 39:6A–31), it has not required arbitration of UM claims at all. Thus the ascertainable public policy here is to encourage resort to arbitration while preserving full flexibility to the parties to elect or reject, and to structure and limit, that process as they choose.

> [(Emphasis added) (citations omitted).]

The principle that the scope of arbitration is determined exclusively by the underlying contract is at the root of the line of cases in our courts that hold or observe that under the "standard" UM endorsement clause an arbitrator is permitted to decide only two issues: the extent of the liability of the tortfeasor and the total amount of damages. *See, e.g., Riccio, supra,* 108 *N.J.* at 496, 531 *A.*2d 717 (dicta); *Tornatore v. Selective Ins. Co.,* 302 *N.J.Super.* 244, 246, 254–55, 695 *A.*2d 313 (App.Div.1997) (noting that in New Jersey UM coverage issues are customarily decided by court and issues of liability and damages are decided by arbitrator, but holding that under unique circumstances of claim involving injuries sustained by "good samaritan" EMS worker who stopped to render assistance at multi-vehicle accident caused by uninsured motorist's vehicle, issue of proximate causation as well as liability would be decided by arbitrator); *Franklin, supra,* 160 *N.J.Super.* at 297, 389 *A.*2d 980 (noting that "it is well settled in this State that coverage questions are not arbitrable under the usual arbitration clause contained in an uninsured motorists endorsement");

*Government Employees Ins. Co. v. Bovit,* 142 *N.J.Super.* 268, 273–74, 361 *A.*2d 100 (App.Div.1976) (holding that under standard arbitration clause, issue of existence of "phantom" vehicle was coverage issue, distinct from question of liability of owner/operator of such vehicle, and hence court rather than arbitrator must resolve it); *Selected Risks Ins. Co. v. Schulz,* 136 *N.J.Super.* 185, 187–88, 345 *A.*2d 349 (App.Div.1975) (holding that under standard UM arbitration clause limiting arbitrable issues to liability of owner or operator of insured vehicle and damages of insured, validity of policy clause reducing UM benefits by amount of workers compensation award should be determined by court rather than arbitrator); *Travelers Indemnity Co. v. Mongiovi,* 135 *N.J.Super.* 452, 459, 343 *A.*2d 750 (App.Div.1975) (holding that under standard UM arbitration clause only arbitrable issues are liability of owner or operator of uninsured vehicle and claimant's damages, and question whether disclaimer of coverage by tortfeasor's carrier because of non-cooperation triggers liability under UM coverage is issue for court rather than arbitrator); *New Jersey Mfrs. Ins. Co. v. McDermott,* 201 *N.J.Super.* 251, 254, 492 *A.*2d 1115 (Law Div.1985) (holding that claim by accomplice in attempted theft from commercial establishment for UM coverage based on negligent operation by driver of uninsured "getaway" vehicle presents issue of coverage, not liability, to be determined by court rather than arbitrator); *Government Employees Ins. Co. v. Shara,* 137 *N.J.Super.* 142, 145, 348 *A.*2d 212 (Ch.Div.1975) (holding that validity of restriction in UM policy precluding UM coverage if claimant settles with any tortfeasor without carrier's consent is to be resolved by court rather than arbitrator under standard UM arbitration clause).

Critical to an understanding of those cases that sharply limit the scope of UM arbitration is the language of the "standard" UM arbitration clause commonly in use when those cases were decided. That standard clause, exemplified by the policy language in *Bovit, supra,* 142 *N.J.Super.* at 271–72, 361 *A.*2d 100, reads as follows:

> If any person making a claim hereunder and the company do not agree *that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured,* or do not agree as to the amount of payment which may be owing under this insurance; then upon written demand of either, the matter ... upon which such person and the company do not agree shall be settled by arbitration....
>
> [(Emphasis added).]

Substantially similar language also was used in the arbitration clauses at issue in *Schulz, supra,* 136 *N.J.Super.* at 187, 345 *A*.2d 349; *Mongiovi, supra,* 135 *N.J.Super.* at 456, 343 *A*.2d 750; *McDermott, supra,* 201 *N.J.Super.* at 254, 492 *A*.2d 1115; and *Shara, supra,* 137 *N.J.Super.* at 145, 348 *A*.2d 212.

Construing a UM policy with an arbitration clause virtually identical to that in *Bovit, supra,* 142 *N.J.Super.* at 272, 361 *A*.2d 100, this Court in *Benson, supra,* 87 *N.J.* at 199, 432 *A*.2d 905, overruled *Bovit* and held that the issue of the existence of a "phantom" hit-and-run driver should be determined by an arbitrator rather than the court. *Benson* involved a claim by the insured that his vehicle was forced off the road by a phantom driver who, without contact, cut off his vehicle causing Benson to veer off the road and crash into a tree. Benson demanded arbitration under the provisions of his UM policy requiring arbitration in the event of a disagreement about whether the insured is "legally entitled to recover damages from the owner or operator of an uninsured highway vehicle." *Id.* at 193, 432 *A*.2d 905. Ohio Casualty sought to enjoin the arbitration. The Law Division denied Benson's motion to dismiss the complaint. *Id.* at 194, 432 *A*.2d 905. Reversing the Law Division, this Court concluded

> that the arbitrable issue [the uninsured's liability] subsumes the subordinate issue, whether a hit and run driver existed. Common sense and practicality militate against a technical construction that would cause unnecessary delay in the resolution of the insured's claim. The logic of fairness and economy suggest a one-stop proceeding.
>
> [*Id.* at 198–99, 432 *A*.2d 905.]

In *Benson,* the Court also expressed its concern about the inefficiency that results from the bifurcation of a single dispute between arbitration and judicial intervention:

A modern system of judicial administration should provide not only for the efficient disposition of cases within the judicial system, but also should contemplate alternative methods of dispute resolution outside the system. One such alternative method is arbitration. Just as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration. *See generally* Ford Foundation, New Approaches to Conflict Resolution 44–45 (May, 1978). Thus, our construction of the scope of arbitration clauses is consistent with the policy of favoring commercial arbitration as a speedy and inexpensive method for settling disputes.

[87 *N.J.* at 199, 432 *A.*2d 905.]

Other courts have applied *Benson*'s more pragmatic approach to the extent permitted by the language of the arbitration clause or the issues in dispute. In *Bocelli, supra,* 219 *N.J.Super.* 6, 529 *A.*2d 997, plaintiff sustained serious injuries when he was allegedly cut off by a hit-and-run driver, causing his father's pick-up truck that he was driving to work to veer off the road and strike a bridge abutment. As a resident of his father's household, plaintiff indisputably qualified as a covered person under the policy. Hanover Metro Insurance Company (Hanover) denied coverage on the ground that no hit-and-run driver existed and in reliance on a policy exclusion from coverage of "any person ... [u]sing a vehicle without a reasonable belief that that person is entitled to do so." *Id.* at 9, 529 *A.*2d 997. Bocelli sued to compel arbitration, and Hanover defended on the ground that the existence of a hit-and-run driver and plaintiff's reasonable belief that he was permitted to drive the truck were coverage issues to be resolved by a court rather than an arbitrator.

Holding that the issues were arbitrable, the Appellate Division noted that the language of Hanover's arbitration clause was significantly broader than the "standard" arbitration clause relied on in earlier cases. The Hanover arbitration clause afforded arbitration to all disputes over whether "a covered person ... is legally entitled to recover damages under this endorsement." *Ibid.* The court contrasted that language with that used in the arbitration clause in *Mongiovi, supra,* 135 *N.J.Super.* at 461, 343 *A.*2d 750, which limited arbitration to disputes over whether "a person making a claim ... is legally entitled to recover damages

from the owner or operator of an uninsured highway vehicle." *Bocelli, supra,* 219 *N.J.Super.* at 10, 529 *A.*2d 997.

Noting that the more restrictive policy language in *Mongiovi* focuses on the liability of the owner or operator of the uninsured vehicle, the *Bocelli* court emphasized that the broader language in the *Hanover* arbitration clause encompassed an insured's legal right to recover damages under the UM endorsement. Accordingly, the court concluded that the *Hanover* endorsement "renders arbitrable *all issues related to the liability of the carrier,* including issues of coverage, and not just issues related to the liability of the uninsured motorist and the amount of damages." *Ibid.* (emphasis added).

Construing an arbitration clause virtually identical to those in *Bocelli* and in this appeal, the Appellate Division has determined that an arbitrator rather than a court should decide whether a plaintiff pursuing a UM claim against his carrier has satisfied his policy's verbal threshold. In *Cutitta v. Selective Insurance Co.,* 255 *N.J.Super.* 252, 604 *A.*2d 989 (1992), plaintiff sought damages from his insurer for injuries caused by a collision with an uninsured motorist. The insurer denied the claim on the basis that plaintiff had not satisfied the policy's verbal threshold requirements, and refused to arbitrate the issue. Plaintiff instituted an action to compel arbitration, relying on the policy provision requiring arbitration on demand in the event of a disagreement over whether an insured "is legally entitled to recover damages under this endorsement." *Id.* at 254–55, 604 *A.*2d 989. The Law Division held that the verbal threshold issue was not arbitrable. *Id.* at 254, 604 *A.*2d 989. The Appellate Division reversed, reasoning that the issue of severity of damage was inherently factual and should be determined by an arbitrator. Relying on *Bocelli,* on this Court's opinion in *Benson,* and on an analogous New York precedent, *Aetna Cas. & Surety Co. v. Cochrane,* 64 *N.Y.*2d 796, 486 *N.Y.S.*2d 915, 476 *N.E.*2d 314 (Ct.App.1985), the panel observed that "New Jersey's strong policy encouraging alternate dispute resolution can only succeed where arbitration actually

settles disputes between parties who have specifically contracted for it." *Id.* at 259, 604 *A.*2d 989. *Accord Dicks v. New Jersey Auto. Full Underwriting Ass'n,* 254 *N.J.Super.* 748, 752–53, 604 *A.*2d 239 (Law Div.1992).

We note that insurers on occasion voluntarily submit coverage issues to arbitration although not compelled to do so by policy language. *See, e.g., Perez v. American Bankers Ins. Co.,* 81 *N.J.* 415, 416–17, 409 *A.*2d 269 (1979) (involving submissions to arbitrator to decide whether plaintiff's injuries, allegedly caused by hit-and-run driver, resulted from contact or noncontact accident, and if the latter, whether policy provisions requiring corroboration were satisfied); *Grover, supra,* 80 *N.J.* at 228–29, 403 *A.*2d 448 (involving voluntary submission by insurer to arbitration of question whether competent evidence existed to corroborate plaintiff's claim that his injuries were caused by hit-and-run driver). Moreover, to the extent that policy language governing the scope of UM arbitration may be susceptible to more than one interpretation, we previously have observed that "insurers can modify policy language in an effort to address issues of [UM and] UIM coverage and liability." *Magnifico v. Rutgers Cas. Ins. Co.,* 153 *N.J.* 406, 418, 710 *A.*2d 412 (1998).

In that connection we note that the Insurance Services Office standard form of the 1996 insurance agreement on file with the Department of Insurance provides specifically under the "Arbitration" paragraph applicable to UM coverage that "disputes concerning coverage under this part may not be arbitrated." *See also* Craig & Pomeroy, *supra,* Appendix C–1 at 603 (setting forth arbitration clause of Personal Automobile Policy that expressly precludes arbitration of coverage disputes).

When confronted with an arbitration clause of imprecise scope, such as the one at issue here, we are influenced by the concerns we expressed in *Zirger, supra,* 144 *N.J.* at 342, 676 *A.*2d 1065, about "the potential anomaly of the use of arbitration as a supplement to an adjudication in court." In *Zirger,* we invalidated the standard arbitration clause in the insurer's underinsured

motorists coverage (UIM) endorsement to the extent that it mandated an arbitration proceeding that duplicated the underlying litigation of a tort claim. The plaintiff in *Zirger* sustained injuries in an accident with a tortfeasor who carried only $15,000 in coverage; Zirger's personal automobile policy provided UIM coverage of $1,000,000. The policy required arbitration of disputed questions of liability and damages. On notice to his insurer, Zirger's counsel in the underlying action against the tortfeasor decided to try to a jury Zirger's claim for damages, and the jury awarded Zirger $400,000. General Accident neither objected to nor sought to intervene in the damages trial. General Accident refused to pay Zirger the amount of the jury award and insisted on arbitration. The Appellate Division held that General Accident's consent to Zirger's pursuit of a damage claim did not constitute a waiver of its right to arbitration.

This Court reversed, invalidating the arbitration clause to the extent that it required litigation that was duplicative of the trial of the damages claim. We noted:

The advantages of arbitration evaporate when arbitration is used not as a substitute for litigation, but as a supplement to litigation. Used in that manner, a procedure designed to expedite dispute resolution is transformed into a mechanism for delaying and obstructing final resolution of disputes.

[*Zirger, supra,* 144 *N.J.* at 343, 676 *A.*2d 1065.]

### III

The USAA arbitration clause mandates arbitration in the event of a dispute over whether the insured "is legally entitled to recover damages under this endorsement." Read restrictively, the clause could be understood to refer only to whether Turck has a claim for damages against the unidentified person that fired a handgun at him. A broader and more literal reading would require arbitration to resolve whether Turck's injury is compensable under the UM coverage provisions of the USAA policy. We often have observed that because insurance policies are not readily understood, ambiguities in insurance contracts generally should be resolved against the insurer. *See Sparks v. St. Paul Ins. Co.,* 100

*N.J.* 325, 336, 495 *A.*2d 406 (1985); *Allen v. Metropolitan Life Ins. Co.*, 44 *N.J.* 294, 305–06, 208 *A.*2d 638 (1965). Guided by that principle, as well as by the undesirability of bifurcating UM claims between judicial resolution and arbitration proceedings, we hold that the question whether Turck's injury is caused by an accident and otherwise compensable under the USAA policy is arbitrable.

Our conclusion is influenced by the recognition that the arbitration clause at issue here uses language that is significantly less restrictive than the standard arbitration clause construed in *Bovit, supra,* 142 *N.J.Super.* at 272, 361 *A.*2d 100, and other earlier cases. In addition, the recognition that the insurance industry is able to avoid the ambiguity inherent in the arbitration clause before us by using more precise terminology suggests that the question whether UM coverage issues are arbitrable may not frequently reoccur. Finally, the availability of arbitration to resolve all issues raised by Turck's UM claim is clearly preferable to a bifurcated proceeding requiring judicial resolution of the coverage question and a potentially duplicative arbitration proceeding restricted to liability and damages issues.

We note that the Law Division, relying on *Lindstrom v. Hanover Insurance Co.*, 138 *N.J.* 242, 249, 649 *A.*2d 1272 (1994), concluded that UM coverage does not apply to injuries caused by conduct that is an accident from the victim's perspective but that is intended by the actor. Consistent with our resolution of this appeal, we intimate no view on the appropriate resolution of any legal issues to be decided by the arbitrator.

We affirm the judgment of the Appellate Division.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.