772 A.2d 28 (2001)
339 N.J. Super. 402
Harriet BERGER, Plaintiff-Appellant,
v.
FIRST TRENTON INDEMNITY COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 2001.
Decided April 23, 2001.
*29 David W. Burns, Medford, for appellants (Segal, Gibney, Burns & Cedar, attorneys; Mr. Burns, of counsel and on the brief).
Michael G.B. David, Cherry Hill, for respondent (Truesdale & David, attorneys; Mr. David, of counsel and on the brief).
Before Judges SKILLMAN, CONLEY and LESEMANN.
The opinion of the court was delivered by CONLEY, J.A.D.
This is an uninsured motorist (UM) appeal. Plaintiff insured appeals an order granting defendant insurer summary judgment and dismissing her complaint that sought to compel UM arbitration. As far as we can tell from the "decision" below, the dismissal was based upon a "for fee" exclusion in the UM endorsement contained in plaintiff's automobile policy issued by defendant. We are convinced the "for fee" UM exclusion conflicts with the governing statutory provisions and, thus, is unenforceable. We remand for consideration of additional coverage issues that were not decided by the motion judge.
Preliminarily, we briefly comment on the "decision" below. There were a number of coverage issues presented by the motion. Plaintiff asserted the trial judge lacked jurisdiction to decide them as the policy's arbitration provision required they be submitted to an arbitrator. The coverage issues included not only the "for fee" exclusion but also defendant's contention that the notice and reasonable investigation obligations under its policy provisions and N.J.S.A. 39:6-78(e) had not been complied with. As to the latter, plaintiff asserted a defense of estoppel and argued that the governing policy provisions on notice and investigation were unenforceable. Following oral argument on October 15, 1999, the judge reserved decision. By letter dated October 26, 1999, the judge sent counsel "a copy of the memorandum" on the motion, directing defendant's counsel to submit a proposed order. The "memorandum" appears to be a law clerk memo and addresses only the "for fee" exclusion.
We expect all trial judges to be cognizant of and comply with their responsibility to address the issues and provide findings of fact and conclusions of law when deciding motions. R. 1:7-4; R. 4:46-2(c); Filippone v. Lee, 304 N.J.Super. 301, 306-07, 700 A.2d 384 (App.Div.1997). "It should, of course, be obvious that a judge does not and may not fulfill the obligation to make fact-finding by delegating that responsibility to a law clerk...." Pressler, Current N.J. Court Rules, Comment 2 on R. 1:7-4(a) (2001). See Hungerford v. Greate Bay Casino Corp., 213 N.J.Super. 398, 402, 517 A.2d 498 (App.Div.1986). Sending the attorneys a copy of a clerk's memo does not comply with R. 1:7-4 or R. 4:46-2(c). Neither does it properly serve the interests of the litigants.
The facts are not particularly complex. On April 5, 1994, plaintiff and her husband, New Jersey residents, were visiting Washington, D.C. and were passengers in the backseat of a taxi cab. The cab stopped suddenly, causing plaintiff to be thrown forward thereby striking the front seat of the cab. At that time, she felt "a little" pain on her left side.
*30 When plaintiff and her husband reached their destination, they exited the cab, and it departed. Neither the identity of the cab nor the operator was ever obtained. Plaintiff could describe the taxi cab only as a black and white station wagon and the operator as a middle-aged foreigner, possibly Arabic, who was wearing a turban. No one reported the incident to the police.
That same day, upon the couple's return to New Jersey, plaintiff's pain persisted and her family physician was called. The physician advised plaintiff to go directly to Burlington Memorial Hospital where she was hospitalized for having multiple fractured ribs and shortness of breath. On April 10, 1994, she was released from the hospital.
On April 21, 1994, plaintiff submitted to defendant an application for PIP benefits and, by counsel's letter dated July 8, 1994, defendant was advised of a claim for UM benefits. By letter dated August 3, 1994, defendant rejected the UM claim because the taxi cab did not qualify as an "uninsured motor vehicle" because "[i]t is apparent that [she] was a passenger in a taxi cab ... and could have properly identified the taxi and driver." The record is not entirely clear as to plaintiff's PIP claim, but it does contain an August 31, 1994, note from the PIP adjuster indicating that the hospital's bill had been received and was being audited. The note further reflects "I note you were in a commercial vehicle at the time of the accident. N.J. No Fault regulations are such that only medical payments are covered. Essential services are not reimbursable."
Defendant's payment of plaintiff's PIP claim is not part of the present litigation. However, when defendant continued to deny UM coverage, plaintiff filed her complaint seeking to compel UM arbitration.

I.
Initially, we think it clear that under the terms of the policy, the coverage issues raised by defendant were for the court to decide. While we "strongly favor[ ] arbitration as a means of resolving disputes without tying up limited judicial resources," Craig & Pomeroy, New Jersey Auto Insurance Law, § 23:2, at 348 (2001), "the duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties agreement." United Servs. Auto. Ass'n v. Turck, 156 N.J. 480, 486, 721 A.2d 1 (1998) (quoting Cohen v. Allstate Ins. Co., 231 N.J.Super. 97, 100, 555 A.2d 21 (App.Div.), certif. denied, 117 N.J. 87, 563 A.2d 846 (1989)).
Under the "standard" UM arbitration clause in New Jersey "UM coverage issues are ... decided by court and issues of liability and damages are decided by arbitrator...." Id. at 486, 563 A.2d 846 (citing Tornatore v. Selective Ins. Co., 302 N.J.Super. 244, 246, 695 A.2d 313 (App. Div.1997)). As recognized by the Court in Turck, under the "standard" UM arbitration clause, "an arbitrator is permitted to decide only two issues: the extent of liability of the tortfeasor and the total amount of damages." Id. at 486, 721 A.2d 1. Compare Travelers Indem. Co. v. Mongiovi, 135 N.J.Super. 452, 459, 343 A.2d 750 (App.Div.1975) (under "standard" UM arbitration clause, whether disclaimer of coverage by tortfeasor's carrier for noncooperation renders the vehicle an uninsured vehicle for UM purposes is for the court to decide) with Bocelli v. Hanover Metro Ins. Co., 219 N.J.Super. 6, 10, 529 A.2d 997 (App.Div.1987) (under broader UM arbitration clause the coverage issue is arbitrable).
As depicted by the Court in Turck,
That standard clause, exemplified by the policy language in [Government Employees Ins. Co. v.] Bovit [142 N.J.Super. *31 268,] 271-72, 361 A.2d 100 [(App. Div.1976), certif. denied, 71 N.J. 502, 366 A.2d 658 (1976)], reads as follows:
If any person making a claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance; then upon written demand of either, the matter ... upon which such person and the company do not agree shall be settled by arbitration....
Substantially similar language also was used in the arbitration clauses at issue in [Selected Risks Ins. Co. v.] Schulz, 136 N.J.Super. [185,] 187, 345 A.2d 349 [(App.Div.1975)]; [Travelers Indemnity Co. v.] Mongiovi, 135 N.J.Super. at 456, 343 A.2d 750; [New Jersey Mfrs. Ins. Co. v.] McDermott, 201 N.J.Super. [251,] 254, 492 A.2d 1115 [(Law Div.1985)]; and [Government Employees Ins. Co. v.] Shara, 137 N.J.Super. 142, 145, 348 A.2d 212 [(Ch. Div.1975)].
[156 N.J. at 487-88, 721 A.2d 1.]
In all of the cases cited by the Court as examples of the "standard" UM clause, coverage issues were construed to be with the jurisdiction of the court, while the arbitrator was limited to the issues of the tortfeasor/uninsured motorist liability and damages. The critical language specified as arbitratable only disputes over legal entitlement to recovery of damages from an uninsured vehicle (i.e., from the tortfeasor) in addition to damage disputes.
In contrast, the arbitration clause in Bocelli v. Hanover Metro Ins. Co., supra, 219 N.J.Super. at 8, 529 A.2d 997, provided for arbitration in the event:
we and a covered person do not agree... [w]hether that person is legally entitled to recover damages under this endorsement. ...
[Emphasis added.]
Similarly, the arbitration clause in Turck provided for arbitration of a dispute over "[w]hether [the covered person] is legally entitled to recover damages under this endorsement; or [as] to the amount of damages...." United Serv. Auto. Ass'n v. Turck, supra, 156 N.J. at 483, 721 A.2d 1. (Emphasis added.) In both cases, the arbitration clauses were construed to encompass coverage issues because of the "under this endorsement" phrase. Id. at 493-94, 721 A.2d 1; Bocelli v. Hanover Metro Ins. Co., supra, 219 N.J.Super. at 9, 529 A.2d 997.
Here, defendant's arbitration clause states:
The insured's right to recover these damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle and the amount of these damages will be agreed to by the insured and us. Disagreement as to such right or amounts of damages will be settled by arbitration. Disagreement as to any other issue may not be arbitrated.
The clause, then, provides for arbitration of the "right to recover these damages" and "the amount of these damages." "These damages" refers to "damages that the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle," i.e., the tortfeasor. There is no reference to disputes concerning entitlement "under [the UM] endorsement." Although, therefore, not precisely identical to the "standard" UM language as described in Turck, it is comparable. The focus is upon the liability of the tortfeasor/uninsured motorist and damages. It is certainly not as broad as the "nonstandard" *32 language in the Turck or the Bocelli UM endorsements which were construed as providing for arbitration of coverage issues. The trial court, then, had jurisdiction to resolve the coverage disputes here.

II.
We turn to the "for fee" exclusion. Defendant's UM policy contains an exclusion for
bodily injury suffered or property damage incurred while occupying any vehicle while being used to carry person or persons or property for a fee (other than in a car pool arrangement).
As far as we can decipher from the "decision" below, it was determined there was no UM coverage under this exclusion, primarily in reliance upon CSC Ins. Servs. v. Graves, 293 N.J.Super. 244, 679 A.2d 1244 (Law Div.1996).
Graves is inapposite. Graves involves PIP benefits. The provisions of our "no fault" law and N.J.S.A. 17:28-1.1 are distinct and serve different purposes. Thus, we have said that "[t]he provisions of the `no fault' law do not govern the interpretation of N.J.S.A. 17:28-1.1." Transport of New Jersey v. Watler, 161 N.J.Super. 453, 459, 391 A.2d 1240 (App.Div.1978), aff'd as modified, 79 N.J. 400, 400 A.2d 61 (1979). See e.g. Cerullo v. Allstate Ins. Co., 236 N.J.Super. 372, 375-76, 565 A.2d 1125 (App.Div.1989). As we noted in Campbell v. Lion Ins. Co., 311 N.J.Super. 498, 710 A.2d 576 (App.Div.1998), in which we considered a "for fee" UM/UIM exclusion:
Although the trial court in CSC Ins. Servs. v. Graves, 293 N.J.Super. 244, 247, 679 A.2d 1244 (Law Div.1996), said that this exclusionary phrase "must be taken to mean ... `used as a public or livery conveyance,'" the statement was made in the context of an action for personal injury protection benefits (PIP) and reflects the court's determination that the phrase was an improper attempt to add an exclusion beyond those allowed by N.J.S.A. 39:6A-2a and N.J.S.A. 39:6A-7. Thus, that case does not provide an interpretation of the [for fee] exclusion [in a UM/UIM endorsement]....
[Id. at 504 n. 3, 710 A.2d 576.]
The exclusion before us in Campbell provided:
A. We do not provide coverage under this [UM/UIM] endorsement ... for "property damage" or "bodily injury" sustained by any person:
....
3. When "your covered auto" is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.
[Id. at 500-01, 710 A.2d 576.]
Although we ultimately concluded the exclusion was enforceable under N.J.S.A. 17:28-1.1 in the context of UIM benefits, we said as to UM benefits:
Plaintiffs' claim for UM coverage is barred by the settlement they reached with Livolsi's carrier, and that is so regardless of the carrier's initial position denying coverage and despite the absence of any formal admission of coverage. Kerwien v. Melone, 288 N.J.Super. 268, 274-75, 672 A.2d 235 (App.Div. 1996). Thus, we should not address the issue on which the trial court focused its attention: whether the exclusion in question, in relation to UM coverage, violates public policy because it goes beyond those exclusions permitted by statute. See N.J.S.A. 17:28-1.1; cf. CSC Ins. Servs., supra, 293 N.J.Super. at 248, 679 A.2d 1244; Progressive Cas. Ins. Co., supra, 501 N.W.2d at 693 (Davies, J., concurring (expressing the view that in a UM case, acceptance of *33 this exclusion "would defeat the strong policy underlying Minnesota's system of compulsory insurance")).
[Id. at 507, 710 A.2d 576 (emphasis added).]
While, therefore, we declined to address the issue, we signaled our reservation as to the enforceability of a "for fee" exclusion in the context of UM benefits.
Our discussion in Campbell of the exclusion in the context of UIM benefits might be viewed as forecasting that conclusion. In rejecting the contention that, as applicable to UIM benefits, the "for fee" exclusion was "violative of public policy" by "frustrating the purposes of UIM coverage," we contrasted the statutorily mandated UM coverage with the optional UIM coverage, observing:
There are important distinctions between UM and UIM coverage. UM coverage must be included in every policy of insurance. N.J.S.A. 17:28-1.1a. One of its primary purposes is to alleviate financial burdens on the Unsatisfied Claim and Judgment Fund which, absent UM coverage, would be required to respond to the claims of injured parties. Riccio v. Prudential Property & Cas. Ins. Co., 108 N.J. 493, 531 A.2d 717 (1987). As a consequence, in UM cases our courts have frequently struck policy provisions which were more restrictive that [sic] those mandated by statute. See, e.g., Perez v. American Bankers Ins. Co. of Florida, 81 N.J. 415, 409 A.2d 269 (1979); Ciecka v. Transamerica Ins. Group, 81 N.J. 421, 409 A.2d 272 (1979); Walkowitz v. Royal Globe Ins. Co., 149 N.J.Super. 442, 374 A.2d 40 (App.Div.), certif. dismissed, 75 N.J. 584, 384 A.2d 815 (1977).
UIM coverage, by contrast, must be offered by an insurance company but need not be accepted by the insured. N.J.S.A. 17:28-1.1b. As noted by the Court in French v. New Jersey Sch. Bd. Ins. Group., 149 N.J. 478 [491-92], 694 A.2d 1008 (1997):
The different legislative concern for the two forms of insurance is that availability of uninsured motorist benefits affects all ratepayers of insurance (all auto insurance companies pay a portion of their premiums into the Uninsured Motorist Fund), where the availability of UIM benefits affects only the parties insured under the contract.
As a result, the French Court [id. at 492, 694 A.2d 1008,] went on to hold as follows:
[I]t is fundamental that in the absence of a statutory prohibition to the contrary, an insurance company has a right to impose [upon UIM benefits] whatever conditions it desires prior to assuming its obligations.
[311 N.J.Super. at 507-08, 710 A.2d 576.]
The statutory scheme governing UM benefits is mandatory. That is not to say that a UM endorsement cannot add to the statutory mandates. Brown v. Selective Ins. Co., 311 N.J.Super. 210, 213, 709 A.2d 812 (App.Div.1998). But when a provision in the endorsement operates:
to reduce or take away from the coverage mandated in N.J.S.A. 17:28-1.1, the contractual provision will almost certainly be found void and the statutorily required coverage read into the policy as a matter of law. Time and time again, the courts of New Jersey have struck down policy language more restrictive than the statutory mandate and held that coverage in accordance with the remedial aims of the legislation must be afforded regardless of the contractual efforts to limit coverage.
[Craig & Pomeroy, supra, § 19:2 at 270.]
See Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 240, 412 A.2d 755 (1980); *34 Perez v. American Bankers Ins. Co. of Fla., 81 N.J. 415, 419, 409 A.2d 269 (1979); Ciecka v. Transamerica Ins. Group, 81 N.J. 421, 427, 409 A.2d 272 (1979); Pasterchick v. Insurance Co. of No. Am., 150 N.J.Super. 90, 94, 374 A.2d 1243 (App.Div. 1977). "Policy exclusions which attempt to restrict [the UM] statutory class violate the expressed purposes of such legislation." Fernandez v. Selected Risks Ins. Co., supra, 82 N.J. at 242, 412 A.2d at 758.
Plaintiff claimed entitlement to UM coverage here pursuant to N.J.S.A. 17:28-1.1e(2)(c) which includes in the definition of an "uninsured motor vehicle" a "hit and run motor vehicle as described in section 18 of P.L. 1952, c. 174 (C.39:6-78)." N.J.S.A. 39:6-78 depicts a hit and run vehicle as a vehicle that has caused injury to a person, but where the identity of it and its operator or owner cannot be ascertained.
N.J.S.A. 17:28-1.1 does contain exclusions for vehicles that would otherwise qualify as an uninsured motor vehicle. In this respect, N.J.S.A. 17:28-1.1e(2) states in part:
"Uninsured motor vehicle" shall not include an automobile covered by a basic automobile insurance policy; an underinsured motor vehicle; a motor vehicle owned by or furnished for the regular use of the named insured or any resident of the same household; a self-insurer within the meaning of any financial responsibility or similar law of the state in which the motor vehicle is registered or principally garaged; a motor vehicle which is owned by the United States or Canada, or a state, political subdivision or agency of those governments or any of the foregoing; a land motor vehicle or trailer operated on rails or crawler treads; a motor vehicle used as a residence or stationary structure and not as a vehicle; or equipment or vehicles designed for use principally off public roads, except while actually upon public roads.
There is no statutory exclusion for a "for fee" vehicle. It has been noted that "[t]here is nothing in the purpose of N.J.S.A. 17:28-1.1 that would limit its application to passenger automobiles as distinguished from other motor vehicles." Transport of New Jersey v. Watler, supra, 161 N.J.Super. at 459, 391 A.2d 1240 (finding that UM coverage applied to bus owned and operated by the state, which was self-insured). A taxi cab, then, may qualify as an "uninsured motor vehicle."
We are convinced, therefore, that defendant's "for fee" exclusion restricts the coverage otherwise mandated by the statute. As such, it is unenforceable.
Reversed and remanded for disposition of the remaining issues raised below but not decided. As we have said, disposition of these issues shall be accompanied by a judicial decision that complies with R. 1:7-4 and R. 4:46-2(c). We express no view as to these issues and do not retain jurisdiction.