WILLIAM T. BIEHLER, PLAINTIFF-RESPONDENT, v. GREAT AMERICAN INDEMNITY CO., A CORPORATION, DEFENDANT-APPELLANT.

Submitted May 6, 1941—Decided July 16, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and HEHER.

For the plaintiff-respondent, *Irving Reiken* and *Louis P. Brenner*.

For the defendant-appellant, *Autenrieth & Wortendyke* (*Reynier J. Wortendyke, Jr.*).

The opinion of the court was delivered by

CASE, J. Thomas Webb was insured against automobile liability by the defendant company. Plaintiff Biehler secured

a judgment against Webb for damages arising out of an automobile accident. The judgment was not paid and plaintiff thereupon brought this action thereon against the insurer. Judgment was rendered by the judge of the Trenton District Court, sitting without a jury, in favor of the plaintiff and against the defendant for $161.80 and costs. Defendant appeals and alleges error under two points, first, that the trial court excluded appellant's offer of evidence of cancellation of the policy sued upon and, second, that recovery under the policy was precluded by the breach of a warranty.

The first point is based upon the court's refusal to permit defendant to ask of a clerk from its cancellation department the following question: "I show you a paper, pasted to other papers [indicating] and I call your attention to a yellow sheet marked 'Notice of Cancellation' with post office mark receipt thereon and I ask you if you recognize it, and, if so, please tell us what it is." The question was objected to upon the ground that it was directed toward a paper that was admittedly a copy and not the original document. It was advanced by defendant's counsel before the trial court in support of the question that the insurer had exercised its option under the policy to cancel the policy, that the cancellation had been effected by the mailing to Webb of a notice of cancellation of the policy, that the subject of proof was a copy of that notice from the files of the company and that the purpose of the examination was to show the contents of the cancellation notice. No demand to produce the original had been made upon plaintiff; an omission of which we make little because it was not to be expected that the plaintiff had, and it is conceded that he did not have, the original paper. But the defendant had laid no foundation for the admission of secondary proof. So far as the record discloses defendant had made no effort to secure the original and no reason was given for not so doing. No *subpœna duces tecum* had been served upon Webb. Webb was available to the defendant; indeed, later in the trial, he was produced by defendant as a witness and questioned on other matters. In that examination defendant's counsel denominated Webb a hostile witness; but the court did not declare him to be such and moreover

the incident occurred after the disputed ruling. Secondary evidence normally cannot be received without first accounting for the original. *Linden Silk Co.* v. *Paterson Silk Throwing Co., Inc.,* 119 *N. J. L.* 482. The theory on which evidence of a secondary grade is admitted is that the production of the primary evidence is out of the party's power. As a general rule, a party is expected to show that he has, in good faith, exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him. *Johnson* v. *Arnwine,* 42 *Id.* 451; *Koehler* v. *Schilling,* 70 *Id.* 585. See, also, *Corbo* v. *East Orange and Ampere Land Co.,* 86 *Id.* 563; *Fielder* v. *Friedman,* 124 *Id.* 514; *Cumberland Mutual Fire Insurance Co.* v. *Gillinan,* 48 *Id.* 495. We find no error in the court's ruling.

Appellant's second point rests upon the proposition that by the terms of the policy the purpose for which Webb's automobile was to be used was "private livery" whereas, as alleged, the automobile was actually used as a taxicab, and that such use constituted a breach of the promissory use warranty. The argument, both factually and legally, is tenuous. In the first place we are left in much confusion as to what "private livery" means. The policy gives no light. The most pertinent definition of "livery" given in Webster's New International Dictionary—or rather the definition which comes nearest to being pertinent—is: "6. Of horses: (a) The feeding, stabling, and care of horses for pay; boarding; as, to keep one's horses at livery. (b) The keeping of horses, and hence of vehicles, boats, &c., in readiness to be hired; the state of being so kept. (c) U. S. A livery stable;" and we find no suggestion therein as to what a "private" livery is. The appellant seeks the construction of a contract which it drew and which, therefore, when ambiguous, is to be taken most strongly against the appellant. It summons to its support a definition of "taxicab" contained in *R. S.* 48:16-1 and a policy provision which provides that "This policy does not apply (a) while the automobile is used in the business of demonstrating or testing, or as a public or livery conveyance, or for carrying persons for a consideration, or while rented

under contract or leased, unless such use is specifically declared and described in this policy and premium charged therefor * * *." But against this is the fact that the use of "private livery," which must indicate some form of livery, and therefore, it seems, some character of public use, is specifically declared in the policy as that to which the automobile was to be put. The only proof that the car was put to an undeclared use was this: Defendant placed the plaintiff on the stand, confronted him with the state of demand which his attorney had filed in the suit against Webb and had the witness state that the pleading alleged that plaintiff's automobile was "then and there run into and struck * * * by the * * * taxicab of the defendant Thomas Webb," and that the allegation was true. Appellant concludes therefrom that plaintiff admitted that what his pleading in the suit against Webb called a taxicab is what the statute, *R. S.* 48:16-1 and *R. S.* 48:16-13, with which we are not concerned, defines as an autocab or taxi and definitely not a use permitted by the policy. That conclusion is, we think, a *non sequitur;* because the definition of taxi or "autocab" contained in the statute is by its terms limited to uses of the statute and is not completely such as may be found in almost any standard dictionary. Moreover, plaintiff's suit against Webb in no way hinged upon the character of vehicle used by the latter or upon the use actually made of it; whether Webb's car was or was not a taxi, or a taxicab, or an autocab, was not an issue in that action and was without bearing upon Webb's liability to Biehler.

The precise error which appellant presents in the point under discussion is that the court erred in denying defendant's motion for judgment in its favor at the close of the case for the reason that the evidence conclusively showed a breach of the promissory warranty. In our opinion the evidence did not conclusively so show and, consequently, the court did not err.

The judgment below will be affirmed.