293 N.J. Super. 244 (1996)
679 A.2d 1244
CSC INSURANCE SERVICES AS SERVICING CARRIER FOR THE MTF OF NEW JERSEY, PLAINTIFF,
v.
IDA GRAVES, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided March 6, 1996.
*246 Roseann Primerano for defendant, Ida Graves (Amendola & Primerano, attorneys).
Joseph A. Bottitta for plaintiff, CSC Insurance Services.
Michael J. Kelly for Paul Williams (DeSevo, Cerutti & Lombardi, attorneys).
GOLDMAN, J.S.C.
On July 10, 1995, the court heard summary judgment motions brought by CSC Insurance Services (CSC) and Ida Graves (Graves) as to CSC's liability for personal injury protection (PIP) benefits claimed by Graves. The court deconsolidated this case from the underlying negligence action brought by Graves against Paul Williams. The court granted summary judgment to Graves and denied CSC's motion. CSC appealed and moved to supplement the record and remand, which the Appellate Division granted on December 12, 1995. On remand, the court heard oral argument on CSC's motion to reconsider based upon the supplemental materials. The court reaffirms its order granting summary judgment to Graves and denying it to CSC.
This is a case of first impression in New Jersey. It requires interpretation of a form exclusion clause regarding PIP benefits, which most, if not all, automobile insurance policies contain. In fact, the prototype insurance policy reproduced in Cynthia M. Craig & Daniel J. Pomeroy, New Jersey Auto Insurance Law app. C-1 at 535, 539 (1995) includes the clause in dispute.
On November 22, 1991, Graves' passenger van was allegedly rear-ended by Williams' vehicle. Traveling with Graves were several children, including Eddie Mills, a customer of her day care center. Graves and those children related to her received substantial *247 PIP benefits from CSC, which now seeks to recoup those benefits previously paid to Graves and her relatives. CSC argues that Graves was being paid to care for Eddie Mills and was therefore, directly or indirectly, receiving a fee for transportation, which would bar PIP coverage under the policy. The clause reads: "[w]e do not provide Medical Payments Coverage for any person for `bodily injury' ... 2. Sustained while `occupying your covered auto' when it is being used to carry persons or property for a fee."
To decide the issues, I must decide what the "used to carry persons or property for a fee" language in the exclusion clause means. For three independent reasons explained below, these words must not be taken literally, but must be taken to mean the same as "used as a public or livery conveyance" in N.J.S.A. 39:6A-2a. This law defines an automobile for PIP purposes as: "a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver...." Ibid. CSC does not claim that the passenger van is "a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or a camper type vehicle ..." Ibid. The passenger van contained rows of seats and was designed for conveying passengers and not cargo. Giordano v. Allstate Insurance Co., 260 N.J. Super. 329, 332, 616 A.2d 936 (App.Div. 1992). If the passenger van were used as a public or livery conveyance or rented to others with a driver, it would not be an automobile under the statute, and there would be no PIP coverage. Commercial use is not the test. "[W]e perceive no legislative design to exclude [from PIP coverage] private passenger vehicles commercially owned and used in business pursuits." Wagner v. Transamerica Insurance Company, 167 N.J. Super. 25, 31, 400 A.2d 497 (App.Div. 1979), certif. denied, 81 N.J. 60, 404 A.2d 1159 (1979) (finding PIP coverage for car salesman driving passenger vehicle owned by car dealer to show to potential buyer). The undisputed facts show that Graves' passenger van was neither used as a *248 public or livery conveyance nor rented to others with a driver, so there is PIP coverage.
First, to extend the meaning of the policy exclusion beyond that of the "public livery or conveyance" exclusion in the statute would create another exclusion beyond N.J.S.A. 39:6A-7, which narrowly defines the permitted PIP exclusions:
a. Insurers may exclude a person from benefits under section 4 and section 10 [of N.J.S.A. 39:6A] where such person's conduct contributed to his personal injuries or death occurred in any of the following ways: (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or (2) while acting with specific intent of causing injury or damage to himself or others.
Hermann v. Rutgers Casualty Insurance Co., 221 N.J. Super. 162, 165-66, 534 A.2d 51 (App.Div. 1987), held that the PIP statute controls when it conflicts with an insurance policy, even though the Commissioner of Insurance approved the policy language. There, the policy limited PIP coverage to accidents occurring in the fifty states, Canada and Puerto Rico. Injuries were sustained in an accident in Hungary. The court held that "`[a]n insurer is permitted to exclude a person from benefits under the required [PIP] coverage, but such exclusions are limited to specified instances' enumerated in N.J.S.A. 39:6A-7." Id. at 167, 534 A.2d 51 (quoting Fellippello v. Allstate Insurance Co., 172 N.J. Super. 249, 261, 411 A.2d 1137 (App.Div. 1979)). Thus, PIP coverage was mandated for the accident in Hungary because the policy limitation did not apply.
If an exclusion was interpreted to go beyond those permitted by statute, the exclusion would be unenforceable. Selected Risks Insurance Co. v. Zullo, 48 N.J. 362, 373, 225 A.2d 570 (1966); Fellippello, supra, 172 N.J. Super. at 262, 411 A.2d 1137 (holding that contractual exclusions under PIP that go beyond the exclusions enumerated in the statute, such as a limitation to New Jersey accidents, are unenforceable). Interpreting the CSC exclusion narrowly so that it does not extend beyond the statutory exclusions fulfills this principle of construction.
*249 Second, exclusionary clauses are construed strictly against the insurer. Fellippello, supra, 172 N.J. Super. at 261, 411 A.2d 1137. When interpreting an auto insurance policy, a court should interpret the policy language liberally in favor of the insured. Id. at 257, 411 A.2d 1137. "Courts are bound to protect the insured to the full extent that any fair interpretation will allow." Ibid. (quoting Mazzilli v. Accident & Casualty Insurance Co. of Winterthur, 35 N.J. 1, 7, 170 A.2d 800 (1961)). 6C Appleman, Insurance Law & Practice, § 4434 at 427-28 (Buckley ed. 1979), discusses exclusionary language very similar to the CSC exclusion clause. Rather than interpreting the clause literally, Appleman construes it strictly against the insurer and suggests an interpretation analogous to the "used as a public or livery conveyance" exclusion:
the modern test [under exclusion "where passenger is carried for consideration"] is whether transportation is generally available to the public rather than whether any money has been or will be paid. On this basis, use of the insured vehicle to transport fellow employees, children home from private day camp, a high school band, or by an employment agency to transport its employees, were found not to be within the exclusion clause.
[Ibid. (emphasis added)]
Thus, narrowly interpreting the "used to carry persons or property for a fee" exclusion to be consistent with the "used as a public or livery conveyance" exclusion in the statute fulfills this principle of construction.
Third, and most important, policy considerations and legislative intent require that occasional use cannot be the determining factor in deciding if the "for a fee" exclusion applies. In Bello v. Hurley Limousines, Inc., 249 N.J. Super. 31, 591 A.2d 1356 (App. Div. 1991), plaintiff's estate sought PIP benefits for injury from a motor vehicle accident involving a limousine registered with omnibus livery plates. At the time of the accident, however, it was being used for non-business, personal transportation. Although Bello involved the converse of the situation here, its holding is nonetheless applicable. In rejecting Bello's claim for benefits, the court held:

*250 [t]he motor vehicle's classification as a public or livery conveyance for passengers does not change by its temporary or transitory use for some other purpose. Rather, the motor vehicle's general status controls its classification. Had the Legislature intended that the motor vehicle's use at the precise time of the accident controlled its classification, it is reasonable to conclude that the Legislature would have included language to that effect in the Act. The Legislature did not include such language and in our view it is clear that the Legislature did not intend to do so.
[Id. at 37, 591 A.2d 1356.]
The court explained the policy rationale:
[m]oreover, classifying vehicles by their use at the precise time of the accident would create chaos and undermine the purposes of the Act. New Jersey's no-fault law is designed to limit litigation in the area of personal injury claims by providing a system of personal injury protection regardless of fault. One of the no-fault law's purposes is to insure prompt payment of medical and hospital bills, without the injured party having to engage in or await the outcome of lengthy and costly litigation.
[Ibid.]
If the "for a fee" exclusion depended upon use at the time of the accident, chaos would indeed reign. Costly litigation would be required to discover who paid how much, to whom, for what, and with whose knowledge. Determining the cost of the trip at issue and whether the amount paid was a "fee" or merely a cost reimbursement could require extensive litigation. The supposedly prompt payment of medical and hospital expenses would become very complex. Individuals using the vehicle would never know if PIP coverage applied, because they would not be privy to the arrangements made with the other passengers. For example, CSC also claims that coverage should be denied to other children who were passengers merely because Eddie Mills, an allegedly paying passenger, was present. The policies underlying the legislative intent described in Bello, supra, preclude having PIP coverage depend upon use at the precise time of the accident (i.e., the "for a fee" exclusion).
What, then, does it mean for a vehicle to be used as a public or livery conveyance? N.J.S.A. 39:6A-2a, as cited above, does not define "public or livery conveyance." Black's Law Dictionary defines "livery conveyance" as "a vehicle used indiscriminately *251 in conveying the public, without limitation to certain persons or particular occasions or without being governed by specific terms." Black's Law Dictionary 935 (6th Ed. 1990). Couch on Insurance 2d provides the same definition as Black's Law Dictionary, adding "The words [public conveyance] imply the holding out of the vehicle to the general public for carrying passengers for hire. The words `livery conveyance' mean about the same thing." 10A Couch on Insurance 2d § 42.580 at 638-39 (Rhodes rev. 1982); see also, C.T. Drechsler, Annotation, Construction and Effect of Exclusionary Clause in Automobile Liability Policy Making Policy Inapplicable While Vehicle Is Used as a "Public or Livery Conveyance," 30 A.L.R.2d 273, § 2, at 275-76, § 5, at 277-79 (1953 & Supp. 1995).
N.J.S.A. 48:16-13 involves an entirely different subject, the regulation of busses and livery services, but uses a similar definition. It first defines "autocab" as follows:
"Autocab" means and includes any automobile or motor car with a carrying capacity of not more than nine passengers, not including the driver, used in the business of carrying passengers for hire which is held out, announced or advertised to operate or run or which is operated or run over any of the streets or public highways of this State, and which is hired by charter or for a particular contract, or by the day or hour or other fixed period, or to transport passengers to a specified place or places, or which charges a fare or price agreed upon in advance between the operator and the passenger.
[(emphasis added.)]
N.J.S.A. 48:16-13 then defines "livery service" as "the business of carrying passengers for hire by autocabs." Thus, this definition of livery also depends upon the holding out of the vehicle for the purpose of carrying passengers for hire.
Finally, in Biehler v. Great American Indemnity Co., 127 N.J.L. 114, 116, 21 A.2d 225 (Sup.Ct. 1941), the court found much confusion in the term "private livery" because it found the term "livery" indicated "some character of public use." Thus, a "private livery" is a self-contradiction. Again, access by the public was the definitional issue.
*252 Therefore, the issue becomes whether the passenger van was held out to the public for hire. The facts in the case at bar are as follows: Graves operated a day care center. At the time of the accident, she was being paid to take care of Eddie Mills. Mills was in the passenger van because Graves was visiting her family, and she did not want to leave him alone, or because she drove Mills as part of her day care services.
In either case, these facts do not constitute "being used to carry persons or property for a fee." CSC argues that because parents were paying Graves for day care services, which included trips or transportation, she was indirectly receiving a fee for transportation. However, the issue is not accepting a fee for transportation, either directly or indirectly. The issue is whether Graves held her passenger van out to the public for hire. The supplemental materials now before the court do not change this conclusion; for, at most, they indicate that Graves may have frequently used the vehicle to provide children with transportation to and from the center. The supplemental materials do not demonstrate that Graves' passenger van was generally accessible to the public.
Even frequent use in transporting day care center clients would not transform the passenger van into a vehicle open to the public for hire. It was registered with the New Jersey Division of Motor Vehicles to Graves personally, as a private passenger vehicle, not as an omnibus livery vehicle. There is no suggestion in the record that Graves, or others on her behalf, ever misrepresented the type or use of passenger van in any application for insurance to CSC. No claim of fraud in the original application for insurance is made by CSC. The supplemental materials do not alter the conclusion that Graves was not holding her passenger van out to the public for transportation of passengers for hire. Graves' passenger van was not a public or livery conveyance.