**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-1786-19
                      A-1866-19
                      A-2049-19

KYUNG H. CARPIO a/k/a
JOY CARPIO, and MICHAEL
B. CARPIO,

     Plaintiffs-Appellants,

v.

NICOLE A. CHICCHETTI, an
individual and JOSEPH M.
CALAVANO, an individual,

     Defendants-Respondents.
_____

ALLSTATE NEW JERSEY
PROPERTY & CASUALTY
INSURANCE COMPANY,

     Plaintiff-Appellant,

v.

JOSEPH M. CALAVANO and
LIBERTY MUTUAL
INSURANCE COMPANY,

Defendants-Respondents,

and

NICOLE A. CHICCHETTI,

Defendant/Third-Party
Plaintiff-Appellant,

v.

THE ESPELAND GROUP, LLC,

Third-Party Defendant,

and

KYUNG H. CARPIO a/k/a JOY
CARPIO, and MICHAEL B.
CARPIO,

Defendant/Third-Party
Plaintiff-Respondent,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

Third-Party Defendant.
_____

ALLSTATE NEW JERSEY
PROPERTY & CASUALTY
INSURANCE COMPANY,

Plaintiff-Respondent,

2

A-1786-19

v.

JOSEPH M. CALAVANO and
LIBERTY MUTUAL
INSURANCE COMPANY,

     Defendants-Respondents,

and

NICOLE A. CHICCHETTI,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

THE ESPELAND GROUP, LLC,

     Third-Party Defendant,

and

KYUNG H. CARPIO a/k/a JOY
CARPIO, and MICHAEL B.
CARPIO,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

     Third-Party Defendant.
_____

3

Argued April 28, 2021 – Decided June 29, 2022

Before Judges Accurso, Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket Nos. L-3563-15 and L-1932-17.

Michael F. Lombardi argued the cause for appellants/ respondents Kyung H. Carpio a/k/a Joy Carpio and Michael B. Carpio (Lombardi & Lombardi, PA, attorneys; Michael F. Lombardi and Nicole M. Lombardi on the briefs.)

Glenn R. Moran argued the cause for appellant/ respondent Allstate New Jersey Property & Casualty Company (Leary Bride Mergner & Bongiovanni, PA, attorneys; Glenn R. Moran, on the briefs.)

Anthony V. DiAntonio argued the cause for appellant/ respondent Nicole A. Chicchetti (Robinson Burns DiAntonio, LLC, attorneys; Anthony V. DiAntonio, of counsel; Brian Brenner, on the briefs).

William P. Krauss argued the cause for respondent Liberty Mutual Insurance Company (Connell Foley LLP, attorneys; William P. Krauss, of counsel and on the briefs).

The opinion of the court was delivered by

ACCURSO, J.A.D.

These three consolidated appeals arise out of two separate lawsuits consolidated for purposes of discovery, both stemming from a minor car accident in Scotch Plains. In that accident, Nicole A. Chicchetti, driving a

1998 Lincoln Town Car owned by Joseph M. Calavano, rear-ended a car driven by plaintiff Kyung H. Carpio. Although Carpio refused medical treatment at the scene and both cars were driven away, an arbitrator subsequently awarded her $1,500,000 in damages, deeming Chicchetti and Calavano completely at fault. They rejected the award, seeking a trial de novo.

Chicchetti, a recent college graduate working part-time for Calavano's car service business, was insured under her parents' $250,000/$500,000 Liberty Mutual auto policy and their $4,000,000 Liberty Mutual personal umbrella policy. Calavano's Town Car was insured under an Allstate policy with $250,000/$500,000 coverage limits.

A Law Division judge granted Liberty Mutual summary judgment on its auto policy, which excluded coverage for "liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance," as well as on its umbrella policy, which excluded coverage for "business pursuits," unless the liability was "covered by an underlying policy." A different judge denied summary judgment to Allstate, finding its policy exclusion for injury or damage "arising out of the use of an insured auto while used to carry persons or property for a charge, or the use of any auto an insured person is driving while available for hire by the public," was not

A-1786-19

triggered. He accordingly granted motions by Chicchetti and Carpio ordering Allstate to defend and indemnify Chicchetti to the extent of its $250,000 policy limits.

In A-1786-19, Carpio appeals the grant of summary judgment to Liberty Mutual. Chicchetti does the same in A-2049-19. In A-1866-19, Allstate appeals from the denial of its motion and the grant of summary judgment to Chicchetti and Carpio. We reverse the grant of summary judgment to Liberty Mutual and find on the undisputed facts in the motion record that the Town Car driven by Chicchetti was not "being used" as a public or livery conveyance at the time of the accident. Because the business pursuits exclusion in the Liberty Mutual umbrella policy does not apply when the liability is covered by an underlying policy, including Chicchetti's auto policy, we further find there is coverage under the umbrella policy as well. We affirm the denial of summary judgment to Allstate, but we reverse the grant of summary judgment to Chicchetti and Carpio, finding disputed facts as to whether the Town Car was "available for hire by the public," at the time of the accident precluded summary judgment on the Allstate policy.

6

Turning first to the Liberty Mutual policy, Liberty, Chicchetti and Carpio all agree Chicchetti is an "insured" under both the auto and umbrella policies. The auto policy, however, contains the following exclusion:

A. We [Liberty Mutual] do not provide Liability Coverage for any "insured":

. . . .

5. For that "insured's" liability arising out of the . . . operation of a vehicle while it is being used as a public or livery conveyance.

The policy does not define the phrases "while it is being used" or "public or livery conveyance."

The undisputed facts on the Liberty Mutual cross-motions established Chicchetti began driving for Calavano, an acquaintance of her father, on a part-time basis about three months before the accident while she looked for full-time work. Calavano operated a taxi and limousine service, A Better Ride Car Service LLC, in Westfield. According to Calavano, he was the sole employee of the business, which utilized a 2002 Town Car registered as a limousine and bearing omnibus livery or "OL" license plates. He claimed Chicchetti, whom he considered a sort of "probationary" employee he was trying out, drove that car on only a couple of occasions. Calavano ordinarily provided Chicchetti his personal vehicle, the 1998 Town Car she was driving

7

at the time of the accident, to pick up and ferry specific passengers as he assigned. She would pick up his Town Car at his home where he would provide her the keys and a hand-written list of fares, with names and addresses. Chicchetti would only transport fares who had scheduled a ride through Calavano.

When she "was not picking up or dropping off people," Chicchetti was free to use the Town Car to "go to the store," "get lunch," or "go home." She also remained "on-call" to Calavano, to pick up another fare. After Chicchetti completed her fares for the day, she sometimes drove the car back to Calavano's house but would sometimes continue to drive it for her own personal use. Calavano sometimes called Chicchetti to pick up additional people if she continued to use the car, but she could also decline his request to pick up another fare. Chicchetti generally worked three days a week, six hours a day. Calavano paid her in cash on a per trip basis. She was not paid to be "on-call."

On the date of the accident, Chicchetti picked up the 1998 Town Car from Calavano's house in the morning. Calavano claimed the business's 2002 Town Car was in the shop that day, and he was taking the day off. Chicchetti drove directly to pick up and drop off a scheduled customer, her only

8

A-1786-19

scheduled fare of the day.  Afterwards, she drove to the Bagel Chateau in Westfield for coffee and a bagel.  The accident happened after she left the bagel shop, when she was alone in the Town Car with no next assignment. She did not use the car to pick up passengers after the accident.

Applying the exclusion to those facts, the Law Division judge concluded Chicchetti used the 1998 Town Car only on days she was working for Calavano, and that she was "never in possession of the car unless she was on duty — a day that she had a fare, or two, or was on-call to see if there were additional fares."  The judge stated she did not "see how Chicchetti was operating the Town Car for anything but a livery business.  That's the only reason she was able to put herself inside [the car]."

The judge rejected the argument made by Chicchetti and Carpio that the exclusion did not apply because at the time of the accident, Chicchetti was not operating the Town Car "while it [was] being used as a . . . livery conveyance," declaring it "more of an effort to create some ambiguity where none exists."  The judge found Chicchetti was "using that car while in the business of . . . picking up and depositing passengers, even if she didn't have a passenger with her at that time."  Accordingly, the judge granted summary judgment to Liberty Mutual on its auto policy based on the livery exclusion

9

and granted it summary judgment on its umbrella policy pursuant to that policy's business pursuits exclusion, which excludes coverage for injury "arising out of business pursuits or the use of business property, unless the liability is covered by an underlying policy."

Chicchetti and Carpio appeal, arguing the phrase "while it is being used" in the auto exclusion barring coverage for "operation of a vehicle while it is being used as a public or livery conveyance" refers to the vehicle's use at the specific time the accident occurred, or is, at best, ambiguous, requiring it to be interpreted in a manner benefitting Chicchetti. In support of that argument, Chicchetti points to the deposition testimony of a retired senior claims specialist with forty-years' experience offered by Liberty, who acknowledged the terms "public conveyance" and "livery conveyance" were not defined by the policy, and that he would have questioned whether the exclusion applied under the circumstances of this accident, specifically when there was no passenger in the car. The claims specialist testified he would have referred the question to Liberty's legal department for interpretation. He also admitted he would not know what the livery exclusion clause meant if he was an insured looking at his own personal auto policy.

Chicchetti also contends her reasonable expectation the policy would provide her with coverage in the event of an accident "must prevail over the policy exclusion." Carpio further argues the exclusion does not apply because the 1998 Town Car was not "customarily used for livery conveyance," but was instead customarily used by Calavano as his personal vehicle. She contends a "motor vehicle's general status controls its classification," and the 1998 Town Car's use as livery transport on six or eight occasions over a three-month period "did not convert the 1998 . . . Town Car into a livery vehicle."

Liberty Mutual counters that the clause is not ambiguous and "applies to the use of a vehicle owned or operated by an insured." Liberty readily concedes the 1998 Town Car was "capable of being used for personal purposes as well as for excluded livery use," but claims the undisputed fact that Chicchetti was "on-call" at the time of the accident makes clear "Chicchetti was driving the 1998 Town Car as a livery vehicle at the time of the accident." Liberty notes Chicchetti herself claimed she was "driving [her] employer's car on company business" when she reported the accident, and contends Chicchetti expected Calavano to provide insurance for the accident and had no reasonable expectation of coverage under her parents' policies. Liberty maintains its claims specialist's fact testimony that he would seek a legal opinion as to

11

whether the exclusion applied to this accident is irrelevant "to the question of law raised by the contention that [the] policy language is ambiguous."

We review a decision on summary judgment using the same standard applied by the motion judge. Ferrante v. N.J. Mfrs. Ins. Grp., 232 N.J. 460, 468 (2018). Because the parties agree on the facts, our only task is to determine whether the judge was correct in her interpretation of the policy exclusion, which "is a question of law subject to de novo review." Homesite Ins. Co. v. Hindman, 413 N.J. Super. 41, 46 (App. Div. 2010).

The rules surrounding the interpretation of insurance contracts are well established. "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). Policy exclusions, however, while presumptively valid, "must be narrowly construed," with the burden being "on the insurer to bring the case within the exclusion." Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997).

Our Supreme Court has often instructed that "the words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537

(1990).  "When the policy of insurance is clear and unambiguous, the court is bound to enforce the contract as it finds it."  Kook v. Am. Sur. Co., 88 N.J. Super. 43, 52 (App. Div. 1965).  When the policy language is ambiguous, however, it is to be "construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations."  Flomerfelt, 202 N.J. at 441.  Thus, "[w]here the policy language supports two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied."  Lundy v. Aetna Cas. & Sur. Co., 92 N.J. 550, 559 (1983).  In that regard, we are also bound to consider whether "more precise language by the insurer, if chosen, 'would have put the matter beyond reasonable question.'"  Doto v. Russo, 140 N.J. 544, 557 (1995) (quoting Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 7 (1961)).

In our view, the applicability of the Liberty Mutual auto livery exclusion barring coverage "arising out of the . . . operation of a vehicle while it is being used as a public or livery conveyance," hinges in this case on the meaning of the phrase "while it is being used as a . . . livery conveyance."  The motion judge found the exclusion applied because Chicchetti was "using that car while in the business of . . . picking up and depositing passengers, even if she didn't have a passenger with her at that time," because her driving for Calavano was

"the only reason she was able to put herself inside" his Town Car. We have no hesitation in finding the motion judge's interpretation of the phrase a reasonable one. But it is obviously not the only reasonable interpretation. Equally plausible is that the exclusion applies only when the Town Car was actually "being used as a . . . livery conveyance," meaning when Chicchetti was ferrying a passenger — not when she had completed a passenger run without any other assignments ahead of her and was coming back from breakfast and on unpaid "on-call" status for another assignment that never came.

The cases that have interpreted language similar to that Liberty Mutual employed in its auto livery exclusion do not compel a different result. First, the two cases the parties cite, Bello v. Hurley Limousines, 249 N.J. Super. 31 (App. Div. 1991) and CSC Ins. Servs. as Servicing Carrier for MTF of N.J. v. Graves, 293 N.J. Super. 244 (Law Div. 1996), involve applications for personal injury protection (PIP) benefits under the No Fault Act and thus are not on point, although the language in Bello is close to that of Liberty Mutual's auto livery exclusion.

The issue in Bello was whether a car involved in a pedestrian death met the definition of an "automobile" in N.J.S.A. 39:6A-2(a). We concluded a

14

four-door sedan registered as a limousine but temporarily used by the driver for his own personal business was still a limousine and not an "automobile," defined in the statute as "a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver," N.J.S.A. 39:6A-2. Bello, 249 N.J. Super. at 36-37 (emphasis added). We held a "motor vehicle's classification as a public or livery conveyance for passengers" under the Act "does not change by its temporary or transitory use for some other purpose. Rather, the motor vehicle's general status controls its classification." Id. at 37.

Carpio points to the underscored language repeated in Liberty's exclusion, relying on Bello for her argument that "the temporary use of [Calavano's] 1998 Lincoln Town Car for livery purposes, should not change the vehicle's classification as a personal automobile." While the argument obviously has some resonance under the No Fault Act, it has little relevance to the exclusion from liability coverage contained in the Liberty Mutual auto policy we interpret. See Berger v. First Trenton Indem. Co., 339 N.J. Super. 402, 409 (App. Div. 2001) (cautioning against applying the provisions of our "no fault" law to interpret similar language used in other contexts).

Interpreting the language as Carpio suggests would essentially nullify the exclusion in Chicchetti's parents' personal auto policy barring liability coverage "arising out of the . . . operation of a vehicle <u>while it is being used</u> as a public or livery conveyance" (emphasis added).

In <u>CSC</u>, the Law Division was tasked with construing a form policy exclusion clause barring PIP benefits "for any person for 'bodily injury' . . . [s]ustained while 'occupying your covered auto' when it is being used to carry persons or property for a fee." 293 N.J. Super. at 246-47. The carrier, which had paid PIP benefits to the driver and several passengers in her van, including a child enrolled in the driver's daycare center, was attempting to recoup those payments on the theory that the driver's receipt of fees for caring for the child, including transporting him to and from the center, brought the van, and thus the driver and all passengers, within the policy exclusion. <u>Id.</u> at 252. The judge rejected the carrier's claim as an invalid attempt to add an exclusion beyond those permitted by the No Fault Act, instead holding the policy exclusion "used to carry persons or property for a fee" had to be narrowly construed "so that it does not extend" beyond the statutory exclusion "used as a public or livery conveyance" in the definition of "automobile" under the No Fault Act, N.J.S.A. 39:6A-2a. <u>Id.</u> at 248-49.

16

The CSC court concluded that barring PIP benefits to occupants of a covered vehicle "when it is being used to carry persons or property for a fee" would run afoul of our opinion in Bello that "classifying vehicles by their use at the precise time of the accident would create chaos and undermine the purposes" of New Jersey's no-fault law. Id. at 250 (quoting Bello, 249 N.J. Super. at 37). The CSC court found "[i]f the 'for a fee' exclusion depended upon use at the time of the accident," the legislative goal of prompt payment of medical and hospital expenses would be stymied by litigation over "who paid how much, to whom, for what, and with whose knowledge," and persons occupying "the vehicle would never know if PIP coverage applied, because they would not be privy to the arrangements made with the other passengers." Id. at 250.

Concluding the legislative purposes underlying the No Fault Act "preclude having PIP coverage depend upon use at the precise time of the accident (i.e., the "for a fee" exclusion)," the court instead looked to what it meant "for a vehicle to be used as a public or livery conveyance" under the No Fault Act. Ibid. It found the issue was "not accepting a fee for transportation, either directly or indirectly," but rather whether the driver "held her passenger van out to the public for hire." Id. at 252. Because the driver didn't hold her

17

passenger van out to the public to transport passengers for hire, the CSC court reasoned her "passenger van was not a public or livery conveyance" making PIP coverage available. Ibid.

Liberty Mutual asserts CSC stands for the proposition "that there is no practical difference in meaning between a car 'used' as a livery vehicle and a car 'when used' as a livery vehicle." It arrives at this interesting conclusion via a tortuous route.

Liberty begins by asserting the CSC court, "applying established rules of policy construction, concluded that the policy exclusion barring coverage 'when [an automobile] is being used to carry persons or property for a fee' means the same thing as the statutory language exempting an automobile 'used as a public or livery conveyance for passengers.'" It then asserts, with no citation to the text, that "[t]he CSC court found that the addition of the phrase 'when it is being' made no difference to the meaning." Based on that assertion, it reasons "[t]here is also no difference in meaning between the phrase 'when it is being used' (the language of the exclusion in CSC) and the phrase 'while it is being used' (the language of the exclusion here)." Liberty thus concludes "[b]oth phrases refer to an automobile being used as a public conveyance or livery conveyance at the time of an accident."

18

We decline to mount the rickety scaffold Liberty Mutual has erected on CSC to argue away the ambiguity in the language it chose for its livery liability exclusion.  As already noted, courts and litigants must take care about importing concepts specific to PIP benefits under our no-fault law into other areas of insurance, see Berger, 339 N.J. at 409.  Indeed, in Campbell v. Lion Ins. Co. we rejected the CSC court's analysis when construing nearly identical language in the context of a "for fee" UM/UIM exclusion because it was specific to PIP benefits and rested on the CSC court's "determination that the phrase [used to carry persons or property for a fee] was an improper attempt to add an exclusion beyond those allowed" by the No Fault Act.  311 N.J. Super. 498, 504 n.3 (App. Div. 1998).  We likewise reject Liberty's premise "that the policy exclusion barring coverage 'when [an automobile] is being used to carry persons or property for a fee' means the same thing as the statutory language exempting an automobile 'used as a public or livery conveyance for passengers'" outside the PIP context.

More significant, however, the CSC court plainly held policy considerations and legislative intent "preclude having PIP coverage depend upon use at the precise time of the accident."  293 N.J. Super. at 250.  Thus, leaving aside the context, for Liberty to argue the CSC court "found that the

19

addition of the phrase 'when it is being' made no difference to the meaning," of the phrase "used as a public or livery conveyance for passengers," an issue that court never addressed, and then to extrapolate based on the claimed rationale of CSC, that the phrases "when it is being used" and "while it is being used" both "refer to an automobile being used as a public or livery conveyance at the time of an accident," simply turns the case on its head. In short, despite the parties' various attempts to have us rely on language they deem favorable to them far outside the statutory context in which the cases from which they pluck the language were decided, neither Bello nor CSC has any applicability here.

To us, there is simply no doubt the language Liberty employed in its exclusion barring coverage for injuries or property damage "arising out of the . . . operation of a vehicle while it is being used as a public or livery conveyance," could just as reasonably be interpreted as applying only when the vehicle was actually "being used as a . . . livery conveyance," meaning when Chicchetti had a paying passenger in Calavano's Town Car, as it could as the motion judge did in finding Chicchetti was "using that car while in the business of . . . picking up and depositing passengers, even if she didn't have a passenger with her at that time." Had Liberty intended its exclusion to reach

20

Chicchetti's operation of Calavano's personal vehicle while "on-call," to his car service business, it could have "put the matter beyond reasonable question" by choosing "more precise language." See Doto, 140 N.J. at 557.

Because the exclusion as drafted easily supports both meanings, "one favorable to the insurer and the other to the insured," Lundy, 92 N.J. at 559, we are bound to construe the language "against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations," Flomerfelt, 202 N.J. at 441. Liberty's argument that Chicchetti's expectation that Calavano's Allstate auto policy would provide coverage for her, so as to avoid the loose language it employed in its own auto policy and her expectations flowing therefrom, is without sufficient merit to warrant discussion in this opinion. See R. 2:11-3(e)(1)(E). Because Liberty concedes, as it must, that the "business pursuits" exclusion in the umbrella policy under which it denied benefits to Chicchetti does not apply in cases in which the liability is "covered by an underlying policy," we reverse the summary judgment awarded to Liberty on both policies and direct the entry of an order awarding summary judgment to Carpio and Chicchetti on their motions for summary judgment against Liberty in A-2049-19 and A-1786-19.

21

We next turn to Allstate's appeal in A-1866-19. Allstate issued a standard auto policy to Calavano in late 2013 based on his application listing a 2002 Lincoln Town Car and a 2002 Lincoln Navigator as the vehicles to be insured. Calavano testified at his deposition he owned those vehicles before he purchased the 1998 Town Car. The application, which was signed by Calavano, listed the "Car Usage" for both the 2002 Town Car and the Navigator as "pleasure." Calavano claimed both cars were "shot already" when he bought the 1998 Town Car, and he asked his Allstate agent to have the insurance switched to the new car.[1] At the time of the accident, the parties agree Calavano owned two cars, the 1998 Town Car insured by Allstate and the 2002 Town Car with "OL" plates, which was insured by Hub International with Calavano's car service as the named insured.

The Allstate auto policy, which as previously noted had coverage limits of $250,000/$500,000, excluded coverage for

> bodily injury or property damage arising out of the use
> of an insured auto while used to carry persons or
> property for a charge, or the use of any auto an insured
> person is driving while available for hire by the public
> to the extent that the limits of liability for this

---

[1] The agent has since settled Chicchetti's third-party complaint against it for a payment of $20,000 and has not participated in these appeals.

A-1786-19

coverage exceed the limits of liability required by the New Jersey financial responsibility law.

At oral argument on cross-motions for summary judgment by Allstate, Carpio and Chicchetti, a different judge found that at the time of the accident, the 1998 Town Car "was not being used to carry persons for a charge." He also found the phrase "an insured person is driving while available for hire by the public" to be "slightly ambiguous," noting Chicchetti was not available to pick up people on the street, and that Calavano's car service, arguably, was not open to the public but provided service "by invitation" as Calavano "selects his customers as he wants to."

During the colloquy, the judge asked Allstate's counsel hypothetically whether one-time use of a car for hire would forever disqualify a driver like Chicchetti from liability coverage under Calavano's Allstate policy. Counsel responded by saying that had Calavano told Allstate he would occasionally use his 1998 Town Car when the car he used in his car service, which was insured under a commercial livery policy, was in the shop, Allstate wouldn't have issued the policy. Later, in his decision, the judge, while noting it was undisputed the accident did not occur while Chicchetti was carrying a passenger, said "it seems untenable that the car that would be driven one time to pick up a passenger, and take a passenger for a fee would then forever

23                                                                    A-1786-19

onward be excluded, regardless of how much it's used for personal use. And that's the basis of the decision." The judge entered orders the same day denying summary judgment to Allstate and granting summary judgment to Carpio and Chicchetti declaring Allstate owed Chicchetti indemnification and a defense for the accident, making the bodily injury policy limit of $250,000 available to her.

Allstate appeals arguing "Chicchetti was still in the course of operating the [1998 Town Car] for [Calavano's] livery business at the time of the accident inasmuch as it was 'available for hire' as a livery vehicle." It contends the language of its exclusion is "clear and unambiguous" and that "the phrase 'while available for hire by the public' is designed precisely for the facts presented in this matter." According to Allstate, "[t]he only reason [Chicchetti] was operating that vehicle that day and at that time was to be available for hire by the public." It maintains the Town Car Chicchetti was driving was available for hire from the time Chicchetti picked up the car until the time she returned it to Calavano.

Although filing a brief in opposition to Allstate's appeal, Liberty Mutual claims it takes no position on the applicability of the Allstate exclusion. It nevertheless contends the trial judge erred because he "mis-read the livery

24

exclusion in the Allstate policy" and based his ruling on "hypothetical facts." According to Liberty, the Allstate exclusion "addresses two distinct situations." The first part of the exclusion applies to insured autos, including the 1998 Town Car, and excludes coverage "while used to carry persons or property for a charge." In an obvious bid to shore up its own position in the other appeals, Liberty asserts the first part of the Allstate exclusion "that applies to reduce coverage for an insured auto is the applicable provision here."

Liberty asserts the second part of the Allstate livery exclusion applies when "an insured person is driving 'any auto' while that auto is available 'for hire by the public.'" Liberty contends, however, the term "any auto" does not include insured autos, and therefore, the second part of the exclusion, which Allstate argued applied and on which the trial court relied in rendering its decision, is inapplicable to the facts of this case.

Liberty contends "Allstate's argument for a reading of the exclusion in its policy that would reduce liability coverage for personal use of the [1998 Town Car] months after livery use of that vehicle is not Liberty Mutual's position on appeal." It instead submits "the applicable exclusion in [the Liberty] primary automobile policy barring liability coverage for injury or

damage arising out of the operation of a vehicle 'while it is being used as a public or livery conveyance,' unambiguously applies to the facts of this case." Liberty maintains the motion judge erred in basing his decision on his hypothetical, ignoring the undisputed facts in the record that Chicchetti used Calavano's Town Car multiple times before the accident, each time in connection with Calavano's livery business. Liberty thus contends the motion judge "applied the policy exclusion to hypothetical facts," making it "immediately distinguishable from the summary judgment ruling . . . in favor of Liberty Mutual."

Carpio[2] contends the motion judge correctly found Allstate's exclusion could not be applied to bar coverage to Chicchetti. She argues the accident happened at a time Chicchetti had no passengers and was not en route to, or from, a fare. Because the accident occurred while the Town Car was not being used to carry persons for a charge, the first part of the exclusion relating to insured autos, she argues, is plainly inapplicable. Carpio maintains "[a]t the very least," the phrase is ambiguous and should be construed against the insurer.

---

[2] Chicchetti did not file a brief in A-1866-19.

Carpio also contends the 1998 Town Car was not available for hire when the accident occurred, rendering the second part of the exclusion inapplicable. Carpio claims that "being on 'stand-by' or 'on-call' for one of . . . Calavano's customers, does not equate to . . . being 'available for hire by the public.'" According to Carpio, "[t]he phrase, 'while available for hire', should be strictly construed and interpreted to apply to a vehicle that is customarily and regularly available for hire by the public." She maintains Chicchetti's use of Calavano's personal vehicle to transport fares on approximately eight to ten occasions did not convert the vehicle's use to one "available for hire." Carpio argues the 1998 Town Car was not available for hire when "Chicchetti was on stand-by, had no fares scheduled, could have refused a fare, and [was] driving that vehicle on personal, unpaid time."

In its reply brief, Allstate disputes Carpio's and Liberty Mutual's interpretations of the exclusion clause. Pointing to the actual language of its exclusion, barring coverage for bodily injury "arising out of the use of an insured auto while used to carry persons or property for a charge, or the use of any auto an insured person is driving while available for hire by the public," Allstate rejects Carpio's contention "that as to the second operative clause of the exclusion (while available for hire) the word 'while' should be interpreted

to apply only when the auto has a passenger in it." Allstate argues that interpretation is plainly wrong because it would render the first operative clause, which bars coverage of an insured auto "while used" to transport a person in it for a charge, redundant.

Allstate argues Carpio's interpretation "would apparently suggest that when an on-duty taxicab is cruising the streets waiting to be hailed, it is not available for hire because no paying passenger was in it at the time," an obviously ridiculous proposition. Allstate also rejects the argument made by both Carpio and Liberty that the Allstate livery exclusion does not apply because the Town Car Chicchetti was driving "was not available to be 'hailed' by the public as a taxicab would." Allstate contends its "exclusion applies to autos that are available to the public to be hired, not hailed," arguing Chicchetti's "on-call" status at the time of the accident rendered the Town Car "available for hire by the public," thereby excluding coverage under the policy.

Allstate also rejects Liberty's argument that "any auto" in the second operative clause of the exclusion means any auto other than an "insured auto," as contrary to the actual language of the exclusion. Allstate argues the phrase "any auto" in the second clause encompasses all autos including insured autos.

A-1786-19

We reject Carpio's and Liberty's efforts to twist the obvious plain meaning of the Allstate livery exclusion. The Allstate policy excludes coverage for "bodily injury or property damage arising out of the use of an insured auto while used to carry persons or property for a charge, or the use of any auto an insured person is driving while available for hire by the public." In our view, the disjunctive "or" separating the first clause addressing insured autos from the second clause addressing insured persons, does not make the clauses mutually exclusive, and if an insured person, such as Chicchetti, was driving an insured auto, such as the 1998 Town Car, at the time of an accident, either clause may be applied to bar coverage.

As we have already explained in the context of the Liberty policy, Chicchetti's undisputed status as the sole occupant of the Town Car at the time of the accident supports an interpretation that the vehicle was not being used to carry persons for a charge when the accident occurred. Thus, we agree with the motion judge that the first clause of the Allstate exclusion is inapplicable.

But the motion judge erred in finding the phrase "available for hire by the public" in the second clause ambiguous. Courts are not permitted "to disregard the 'clear import and intent' of a policy's exclusion," Flomerfelt, 202 N.J. at 442 (quoting Westchester Fire Ins. Co. v. Cont'l Ins. Cos., 126 N.J.

29

Super. 29, 41 (App. Div. 1973), aff'd o.b., 65 N.J. 152 (1974)), and "should not engage in a strained construction to support the imposition of liability," Longobardi, 121 N.J. at 537.  There is simply nothing ambiguous about the phrase applied to these facts, including that Chicchetti was not permitted to pick up people on the street and that Calavano, in the judge's words, "selects his customers as he wants to."

The ordinary and well understood meaning of "available" is "present or ready for immediate use" or "accessible, obtainable" or "qualified or willing to do something or to assume a responsibility."  Merriam-Webster's Collegiate Dictionary 84 (11th ed. 2014); see Thompson v. Potenza, 364 N.J. Super. 462, 469 (App. Div. 2003) (noting "[d]ictionary definitions may be utilized to determine a word's common meaning").  The common meaning of the phrase "for hire" is "available for use or service in return for payment."  Merriam-Webster's Collegiate Dictionary at 589.  There is no evidence in the motion record that Calavano was selective in choosing his customers, notwithstanding those services were available only by appointment.  Instead, the record demonstrates Calavano advertised his limousine service to the general public, and no evidence suggests he would refuse to provide service to anyone who

30

called his business looking for a ride. Thus, there is no indication in this record that Calavano's car service was not "available for hire by the public."

Indeed, the motion record reflects Calavano's deposition testimony that Chicchetti was doing him a favor on the day of the accident because he wanted to take the day off. He testified that if anyone called him that day requesting a ride, he would have given the job to Chicchetti, and that Chicchetti was "essentially on stand-by." Calavano's testimony thus suggests it was his intention that Chicchetti would provide transportation services using the 1998 Town Car if a call came in from someone seeking a ride.

Notwithstanding our finding that the second operative clause of the Allstate livery exclusion, barring coverage for bodily injury "arising out of . . . the use of any auto an insured person is driving while available for hire by the public," is clear and unambiguous and may well apply to bar coverage for this accident, we deem summary judgment on the issue inappropriate on this record. Although Allstate asserts in its brief that "Chicchetti was still in the course of operating the [Town Car] for [Calavano's] livery business at the time of the accident inasmuch as it was 'available for hire' as a livery vehicle," that fact was disputed on Allstate's, Carpio's and Chicchetti's cross-motions for summary judgment.

31

Specifically, while the parties agree Chicchetti had picked up and dropped off her only scheduled fare of the day before going to the bagel shop for breakfast, and that she was still in possession of the Town Car after she left there and rear-ended Carpio's car, they do not agree on whether Chicchetti was on-call or off-call at the time of the accident. Although acknowledging Calavano and Chicchetti agreed that after Chicchetti completed her fares for the day, she sometimes continued to drive the Town Car for her personal use, with Calavano sometimes calling her to pick up an additional fare, which request she was free to decline, and that Calavano had not called her with another fare prior to the accident, Allstate relied on Calavano's deposition testimony that on the day of the accident he considered Chicchetti "on stand-by" for additional fares. Carpio and Chicchetti both denied that assertion, with Carpio asserting Chicchetti "always had the right to refuse a job," that Calavano and Chicchetti had not spoken on the day of the accident until Chicchetti called Calavano to report it, and that Chicchetti was "on personal, unpaid time" at the time of the accident. Chicchetti relied on what she claimed was her deposition testimony that at the time of the accident she "would have been off call at that point but still using the car before [she] returned it," and if

32

Calavano would have called at that point with a new trip, "'it would be too late' as she would be 'done for the day.'"

Our review of the motion record reveals nothing definitive as to whether Chicchetti was or was not available to pick up another fare at the time of the accident. Despite the parties' differing interpretations of Chicchetti's deposition testimony, she simply was not asked whether she was available for additional fares on the date of the accident. Chicchetti apparently had little memory of that day, being unable to recollect where she had picked up or taken her sole scheduled fare or otherwise where she'd been, other than the bagel shop, or where she was going when the accident happened. Although she certainly testified she could refuse to take new fares and continue to use the car for personal use after completing any scheduled fares, she did not say whether she'd made that decision on the day of the accident. Accordingly, while we agree Allstate did not establish its right to summary judgment on its livery exclusion as a matter of law, Carpio and Chicchetti did not establish their right to summary judgment on that exclusion either.[3]

---

[3] Allstate urges reversal on two alternative grounds, the first — material misrepresentation by Calavano — it claims it didn't argue to the trial court and the second — the "auto or motor vehicle business operations" exclusion — it doesn't argue here. We reject both. As to the first, the law is well-settled we

A-1786-19

To sum up, we reverse summary judgment to Liberty Mutual in A-2049-19 and A-1786-19 and remand for entry of an order granting summary judgment to Chicchetti and Carpio in those appeals, declaring Liberty Mutual owes indemnification and defense to Chicchetti for any liability occasioned by the 2015 accident under Liberty Mutual's auto policy to the extent of its $250,000 liability limit and under its umbrella policy to the extent of its $4,000,000 limit. We also remand for the trial court to assess and award Chicchetti her reasonable attorney's fees pursuant to Rule 4:42-9(a)(6), which application was denied along with her motion for summary judgment. We affirm the denial of summary judgment to Allstate in A-1866-19 and reverse

_____
need not consider arguments not presented to the trial court when the opportunity to do so was available unless such arguments go to the court's jurisdiction or concern matters of significant public interest, neither of which pertains here. See Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). As to the second, Allstate's assertion that "[a]lthough not necessary for the court's decision" because of the "more focused" livery exclusion, "coverage would also be excluded by the 'auto or motor vehicle business operations' exclusion" is not "an adequate legal argument" in support of that claim, 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011), relieving us of any obligation to consider it. See Nextel of New York, Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 45 (App. Div. 2003) ("Where an issue is based on mere conclusory statements by the brief writer, we will not consider it.").

summary judgment to Chicchetti and Carpio and remand for further proceedings not inconsistent with this opinion.[4]  We do not retain jurisdiction.

Affirmed in part, reversed in part, and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4]  Following entry of the trial court orders appealed here, all participants in these appeals, with the exception of Liberty Mutual, as well as the remaining parties, entered into a stipulation of settlement encompassing Carpio's tort action and Allstate's declaratory judgment action.  As relevant here, Carpio agreed to execute a release in favor of Calavano and Chicchetti in the amount of $1,500,000, the amount of the arbitration award, and agreed Calavano and Chicchetti would have no personal financial liability to her if there was no, or limited, insurance coverage.  Carpio dismissed her tort action without prejudice subject to it being reopened by Liberty Mutual were we to decide Liberty owed coverage to Chicchetti.  Allstate agreed to pay either the $15,000 mandatory minimum step-down coverage or its $250,000 policy limit to Carpio, in accordance with findings as to coverage owed to Chicchetti and/or Calavano to be rendered on appeal.  The stipulation provided that if, on appeal, we determined Liberty Mutual owed coverage to Chicchetti, the tort matter would proceed to a liability and damages trial.  Liberty Mutual was not a party to the stipulation of settlement.